(No. 84721.—<span style="background:black">■■■■■</span>

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PATRICK H. WRIGHT, Appellant.

*Opinion filed November 18, 1999.—Rehearing denied*
*January 31, 2000.*

Alan M. Freedman and Gary Prichard, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and C. Steve Ferguson, State's Attorney, of Charleston (Barbara A. Preiner and Joel Bertocchi, Solicitors General, and William L. Browers and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:
Defendant, Patrick Wright, appeals from the trial court's dismissal of his second-amended post-conviction petition. Because defendant was sentenced to death for the underlying murder conviction, defendant appeals directly to this court. See 134 Ill. 2d R. 651(a).

BACKGROUND

A jury convicted defendant of the 1983 murder of Carol Specht, the attempted murder of Connie Specht, and related counts of home invasion, residential burglary, armed robbery, and attempted rape. Defendant waived a jury for purposes of sentencing, and the circuit court of Coles County, Honorable Paul Komada presiding, sentenced him to death. This court affirmed defendant's convictions and sentence of death. *People v. Wright*, 111 Ill. 2d 128 (1985) (*Wright I*).

Subsequently, defendant filed a post-conviction petition. The trial court, Judge Komada presiding, denied all post-conviction relief. Defendant appealed, and this court affirmed. *People v. Wright*, 149 Ill. 2d 36 (1992) (*Wright II*). Thereafter, defendant filed a "Second Petition for Post-Conviction Relief" and a "Second Amended Petition for Post-Conviction Relief." The second petition and the

second-amended petition are the same, except that the amended petition alleges that the first post-conviction proceedings were void.[1] The State moved to dismiss defendant's petitions, and the trial court, Judge Komada presiding, granted the State's motion. Defendant now appeals.

On appeal, defendant contends that the trial court erred in granting the State's motion because (1) Judge Komada violated defendant's due process rights by ruling on defendant's second post-conviction petition, which alleged that, during defendant's trial and sentencing hearing, Judge Komada was operating under a conflict of interest because he had prosecuted defendant for the armed violence conviction that the State used as impeachment evidence during trial and as an aggravating factor during sentencing; (2) Judge Komada had a conflict of interest during the original proceedings, defendant's trial counsel was ineffective for failing to raise the conflict issue, and defendant's counsel on direct appeal was ineffective for failing to argue that trial counsel was ineffective; (3) the prosecutor had a conflict of interest because she served as defendant's attorney on the case in which Judge Komada had prosecuted defendant, and defendant's counsel on direct appeal was ineffective for failing to raise this issue; (4) defendant's trial counsel was ineffective for failing to investigate, argue, and introduce available evidence that defendant should be found guilty but mentally ill (see 725 ILCS 5/115—4(j) (West 1994)); and (5) defendant's attorney was ineffective for failing to investigate the existence of and not introducing available mitigating evidence of defendant's mental deficiency and his psychological problems.

The State contends that defendant's petition is untimely. Alternatively, the State asserts that, even if the

---

[1]For the sake of clarity, we will refer to the second petition and the second-amended petition as the "second petition."

petition is not untimely, the allegations in that petition are waived and barred by *res judicata*.

## TIMELINESS

We first address the State's argument that defendant's second petition is untimely. The trial court entered final judgment on defendant's convictions and sentences on October 31, 1983. This court affirmed defendant's convictions and sentences in October 1985 (*Wright I*, 111 Ill. 2d 128), and the United States Supreme Court denied *certiorari* in February 1987 (*Wright v. Illinois*, 481 U.S. 1024, 95 L. Ed. 2d 519, 107 S. Ct. 1914 (1987)). Defendant filed his initial post-conviction petition in August 1987. In May 1992, this court affirmed the trial court's denial of post-conviction relief (*Wright II*, 149 Ill. 2d 36), and, on February 22, 1993, the United States Supreme Court denied defendant's motion to reconsider the denial of his request for *certiorari* (*Wright v. Illinois*, 507 U.S. 955, 122 L. Ed. 2d 749, 113 S. Ct. 1372 (1993)). Defendant filed his second petition on September 20, 1993.

Section 122—1 of the Post-Conviction Hearing Act (725 ILCS 5/122—1 (West 1994)) provides, in pertinent part:

"No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or issuance of the opinion from the Illinois Supreme Court or 6 months after the date of the order denying certiorari by the United States Supreme Court or the date for filing such a petition if none is filed or 3 years from the date of conviction, whichever is later, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." 725 ILCS 5/122—1 (West 1994).[2]

---

[2]We note that the legislature has since amended section 122—1 to shorten the time within which a defendant must file his post-conviction petition. Because defendant filed his second petition before the effective date of these amendments, they are inapplicable here.

The State asserts that compliance with the time limit in section 122—1 is a jurisdictional prerequisite to maintaining a post-conviction petition. Defendant argues that the time limit is not jurisdictional and that the State has waived its right to argue that defendant's petition is untimely.

## Jurisdiction

Relying upon *People v. Heirens*, 271 Ill. App. 3d 392 (1995), and *People v. Stenson*, 296 Ill. App. 3d 93 (1998), the State argues that the time limit provided in section 122—1 is a jurisdictional prerequisite to maintaining a post-conviction proceeding and that defendant's failure to file timely his petition deprived the trial court of jurisdiction to consider his claims. Defendant does not contend that he filed his petition within the time limit of section 122—1. Instead, he asserts that *Heirens* was incorrectly decided and that the time limit in section 122—1 is a statute of limitations that the State, by failing to raise the issue in the trial court, has waived.

Both *Heirens* and *Stenson* hold that the limitations period found in section 122—1 is a jurisdictional provision that confers subject matter jurisdiction upon the trial court to adjudicate a defendant's post-conviction petition. *Stenson*, 296 Ill. App. 3d at 96; *Heirens*, 271 Ill. App. 3d at 402. In reaching this conclusion, the courts relied upon this court's decision in *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202 (1985). In *Fredman*, this court addressed the difference between statutes of limitations and statutes that both confer jurisdiction on a court and fix a time within which such jurisdiction may be exercised. The court noted that statutes of limitations are procedural in nature and "only fix the time within which the remedy for a particular wrong may be sought." *Fredman*, 109 Ill. 2d at 209. "On the other hand, 'statutes which create a substantive right unknown to the common law *and in which time is made*

*an inherent element of the right so created*, are not statutes of limitation.' " (Emphasis added.) *Fredman*, 109 Ill. 2d at 209, quoting *Smith v. Toman*, 368 Ill. 414, 420 (1938). In such cases, the time limit is "a condition precedent to the plaintiff's right to seek a remedy." *Fredman*, 109 Ill. 2d at 209. Time is a condition of the liability itself and not of the remedy alone. *Fredman*, 109 Ill. 2d at 209. "Such statutes set forth the requirements for bringing the right to seek a remedy into existence. They do not speak of commencing an action after the right to do so has accrued." *Fredman*, 109 Ill. 2d at 210.

A review of the time limitation found in section 122—1 reveals that it has more in common with statutes of limitations than it does with statutes conferring jurisdiction. The plain language of section 122—1 demonstrates that time is not an integral part of the remedy. The mere passage of time does not deprive a defendant of his right to seek a remedy. In fact, if a petitioner can demonstrate that the late filing was not due to his culpable negligence, there is no time limit within which a petitioner must file his post-conviction petition. See *People v. Bates*, 124 Ill. 2d 81, 88 (1988); 725 ILCS 5/122—1 (West 1994). A safety valve that allows an unlimited time in which to file a post-conviction petition cannot be reconciled with a concept that makes time a condition of the liability or with a position that time is an inherent element of the right created. As a lack of culpable negligence permits the filing of a post-conviction petition regardless of the length of time that has passed, a lack of culpable negligence—not time—is the inherent element.

We agree with Chief Justice Freeman that the remedy provided by the Post-Conviction Hearing Act is a remedy unknown at common law. This, however, is not dispositive of the question of whether the time period is jurisdictional. In *Fredman*, this court held that a limita-

tions period is jurisdictional only if it creates a substantive right unknown to the common law, *and* if time is an inherent element of the right created. *Fredman*, 109 Ill. 2d at 209. Clearly both of these provisions must be met. Because time is not an inherent element of the right to bring a post-conviction petition, compliance with section 122—1 cannot be a jurisdictional prerequisite.

This conclusion is supported by the fact that we have previously considered the limitations period to be a statute of limitations. In *Bates*, this court questioned whether an amendment to section 122—1, shortening the limitations period, applied retroactively to a defendant who had been convicted before the amendment was adopted. In holding that the amendment applied retroactively, the court treated the limitations period in section 122—1 as a statute of limitations and specifically noted that "statutes of limitations have historically been classified as procedural in character, and that procedural amendments are generally applied retroactively." *Bates*, 124 Ill. 2d at 85.

Chief Justice Freeman's special concurrence attempts to minimize the effect of this court's decision in *Bates* by suggesting that the question of whether section 122—1 establishes a statute of limitations was not the precise question before the *Bates* court. Notwithstanding these reservations, the fact is that in *Bates* the court held that the time limit in section 122—1 is a procedural statute of limitations and that therefore amendments to it may be applied retroactively. See *Bates*, 124 Ill. 2d at 85. While the court did not address the precise issue raised in this action, it did carefully consider the character of the limitations period and found it to be an ordinary statute of limitations. This is further emphasized by the fact that, in affirming the trial court's judgment, the court stated that defendant's "petition must be dismissed as untimely." *Bates*, 124 Ill. 2d at 88. Such a conclusion is sig-

nificant when one considers that we have a duty to consider, *sua sponte*, whether the trial court had jurisdiction to enter the judgment that it did. See *People v. Bounds*, 182 Ill. 2d 1, 3 (1998); *People v. Canty*, 75 Ill. 2d 566, 570 (1979). The fact that, in *Bates*, the court reviewed the trial court's judgment on the merits is an implicit, if not explicit, recognition that compliance with section 122—1 is not jurisdictional. See *Hamilton v. Williams*, 237 Ill. App. 3d 765, 772-73 (1992). Similarly, in *People v. Reed*, 42 Ill. 2d 169 (1969), this court affirmed the dismissal of an untimely post-conviction petition. Just as in *Bates*, the court dismissed the petition as untimely and not because the trial court lacked jurisdiction. See *Reed*, 42 Ill. 2d at 172. This court's treatment of these untimely petitions reveals that it has always considered the time limit in the Post-Conviction Hearing Act to be a statute of limitations and not a jurisdictional prerequisite.

We therefore hold that the time limit found in section 122—1 is a statute of limitations and that defendant's failure to file his petition within the limitations period did not deprive the trial court of jurisdiction to consider defendant's petition.

### Waiver

The State next contends that, if the limitations period is a statute of limitations, defendant's petition must be dismissed as untimely. The State explains that, even if the limitations period did not begin until after the United States Supreme Court denied *certiorari* in defendant's initial post-conviction proceedings (see *People v. Caballero*, 179 Ill. 2d 205, 214 n.1 (1997)), defendant's petition is untimely because it was filed on September 20, 1993, more than six months after the February 22, 1993, denial of defendant's motion to reconsider the denial of his request for *certiorari*. Defendant does not contend that the petition is timely, but argues that, by not raising the

limitations argument in the trial court, the State has waived its right to argue that defendant's petition is untimely. During oral argument, the State asserted that it has not waived this contention because, as the appellee, it may raise on appeal any argument that might support the trial court's judgment. See *People v. Monroe*, 118 Ill. 2d 298, 300 (1987).

In raising this argument, however, the State ignores the second half of the *Monroe* rule, which requires that any points advanced in support of the trial court's ruling must have a sufficient factual basis before the trial court. *Monroe*, 118 Ill. 2d at 300. Here, although the facts support the conclusion that defendant did not file his petition within the time limits found in section 122—1, that section allows a defendant to file a petition outside the limitations period if the late filing is not due to the defendant's culpable negligence. 725 ILCS 5/122—1 (West 1994). By not raising this issue until the cause was on appeal, the State has effectively precluded defendant from seeking to amend his petition to allege facts demonstrating that the late filing was not caused by his culpable negligence. While we recognize that section 122—1 requires the defendant to allege the facts demonstrating a lack of culpable negligence, we do not believe that this requirement allows the State to wait until an appeal to raise an affirmative defense that the defendant may be able to avoid by amending his petition. By failing to raise this issue below, the State has waived its right to argue that defendant's petition is untimely.

In reaching this conclusion, we caution that we are not limiting the trial court's ability, during the court's initial review of noncapital petitions (see 725 ILCS 5/122—2.1(a)(2) (West 1998)), to dismiss the petition as untimely. The import of our decision is simply that matters relating to the timeliness of a defendant's petition should first be considered in the trial court, either upon

a motion by the State or pursuant to the duty imposed upon the trial court by section 122—2.1(a)(2).

Significantly, the opposite conclusion provides an incentive for the State not to bring timeliness to the trial court's attention. If the State waits until appeal to raise the issue, it has effectively precluded the defendant from seeking to amend his petition to include allegations that he was not culpably negligent in filing his petition.

In sum, while we believe that a defendant should plead facts demonstrating his lack of culpable negligence, we see no reason that this statute of limitations should be treated differently from any other. Thus, if the State wishes to challenge the timeliness of a defendant's petition, it should raise that argument first in the trial court, where any amendments can be made and factual disputes resolved.

## VOIDNESS

Although we do not find that defendant's second post-conviction petition is untimely, that does not mean that it is properly brought. Generally, a ruling on an initial post-conviction petition is *res judicata* with respect to all claims that were raised or could have been raised in the initial petition. *People v. Flores*, 153 Ill. 2d 264, 274 (1992). "Further, any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *Flores*, 153 Ill. 2d at 274; 725 ILCS 5/122—3 (West 1994). A second post-conviction petition is permitted only if the proceedings on the initial petition were deficient in some fundamental way. *Flores*, 153 Ill. 2d at 273-74. This limitation strikes a balance between society's interest in the finality of criminal convictions and the defendant's interest in vindicating violations of constitutional rights. *Flores*, 153 Ill. 2d at 274.

Here, defendant argues that he need not demonstrate that his claims are not barred by waiver or *res judicata*. Instead, he asserts that the proceedings during his initial

petition were void and that, therefore, we must treat this successive petition as an initial petition.

Defendant contends that the initial proceedings were void because Judge Komada refused to recuse himself from considering the initial petition which included an allegation that James Dedman, one of defendant's trial attorneys, was ineffective. During the initial proceedings, defendant orally requested that Judge Komada recuse himself. Defendant alleged that Judge Komada could not impartially rule on the ineffective assistance argument because when Judge Komada was the State's Attorney, Dedman had worked for Judge Komada as an assistant State's Attorney. Judge Komada denied defendant's request. Defendant asserts that the relationship between Judge Komada and Dedman created a conflict of interest that required Judge Komada's recusal. Further, relying upon *People v. Brim*, 241 Ill. App. 3d 245 (1993), defendant contends that Judge Komada's improper refusal to recuse himself rendered void all of Judge Komada's subsequent actions. Defendant concludes that, because the initial proceedings are void, this successive petition is proper.

A defendant in a post-conviction proceeding has no absolute right to a substitution of judge. *People v. Steidl*, 177 Ill. 2d 239, 264 (1997). Unless the defendant can show that it would cause him substantial prejudice, the same judge who presided over the defendant's trial should also preside over the post-conviction proceedings. *People v. Hall*, 157 Ill. 2d 324, 331 (1993). Here, defendant's only allegation that the judge was prejudiced was based on the fact that Dedman once worked for the judge. It is well established, however, that "[t]he mere fact that the judge has some kind of relationship with someone involved in the case, without more, is insufficient to establish judicial bias or to warrant a judge's removal from the case." *Steidl*, 177 Ill. 2d at 264. In fact, that an at-

14

torney was once the judge's law partner is insufficient, by itself, to demonstrate bias. *Steidl*, 177 Ill. 2d at 263-64. Without some specific allegations or evidence to support a conclusion that Judge Komada's relationship with Dedman was so close or so involved that Judge Komada could not fairly rule on defendant's post-conviction petition, we are unable to conclude that the mere fact that Dedman once worked for Judge Komada required Judge Komada to recuse himself. Because Judge Komada was not required to recuse himself, no basis exists to support the conclusion that the original proceedings were void.

## DEFENDANT'S CLAIMS

We turn now to the claims raised in defendant's second-amended petition.

Conflicts of Interests During Defendant's Trial

Defendant's issues regarding the trial court's and the prosecutor's alleged conflicts of interest during the trial are waived because they could have been raised in defendant's initial post-conviction petition. See *Flores*, 153 Ill. 2d at 274. Defendant urges us to relax the waiver rule because the proceedings during his initial petition were fundamentally deficient. See *Flores*, 153 Ill. 2d at 273-74. In particular, defendant contends that he should be permitted to argue that he was denied the effective assistance of his attorneys on direct appeal. Defendant claims that this argument is not waived because, during his initial post-conviction proceedings, he was represented by the same attorneys who represented him on direct appeal. See *Flores*, 153 Ill. 2d at 281-82 (explaining that it is unreasonable to expect counsel to raise and argue his own incompetency).

On direct appeal, defendant was represented by Charles Schiedel and Lawrence Essig of the office of the State Appellate Defender. During his initial post-conviction proceedings, defendant was represented by

Robert McIntire, the Vermilion County public defender. The only evidence that defendant cites to support his claim that Schiedel or Essig represented defendant during the initial post-conviction proceedings is the following statement concerning depositions that McIntire made during a hearing in the initial proceedings:

"I have discussed this with Mr. Schiedel, S-c-h-i-e-d-e-l, and also Mr. Essig, who had previously been involved with Mr. Wright's direct appeal. And it is the judgment of myself and those other two that the showing we have made so far constitutes a *prima facie* case in support of the petition; or that, in the event that the Court were to disagree with this and rule against us, that strategically would not be—would not be of assistance to us to depose [defendant's trial counsel]."

We disagree with defendant that this exchange demonstrates that his appellate attorneys represented him during his initial post-conviction proceedings such that the initial proceedings were fundamentally flawed. The quoted language indicates only that post-conviction counsel consulted with appellate counsel. We do not believe that this is unreasonable conduct. In fact, a consultation with an attorney familiar with the case would likely assist a defendant's post-conviction counsel in becoming familiar with the facts and potential issues and would presumably lead to better and more informed representation for the defendant. Further, we see no reason that such a consultation would prevent post-conviction counsel from arguing that counsel on direct appeal was ineffective.

Because the quoted language indicates only that post-conviction counsel consulted with defendant's appellate attorneys and not that those attorneys represented him in his initial post-conviction proceedings, we are unable to conclude that defendant's initial proceedings were so fundamentally flawed that he is entitled to pursue a second post-conviction petition with respect to his claims that his appellate counsel was ineffective.

### Defense Counsel's Failure to Argue that Defendant Was Guilty but Mentally Ill

Defendant also claims that his trial counsel was ineffective for failing to investigate, argue, and introduce available evidence that defendant should be found guilty but mentally ill. This issue could have been raised during defendant's initial post-conviction proceedings. Consequently, it is waived.

### Defense Counsel's Failure to Introduce Defendant's Mental Health Records

Defendant's next allegation, that his trial counsel was ineffective for failing to introduce certain mental health records during defendant's sentencing hearing, is barred by *res judicata* because we rejected essentially the same argument in *Wright II*. See *Wright II*, 149 Ill. 2d at 51.

### The Trial Judge's Conflict of Interest in Ruling on Defendant's Second Petition

Defendant also contends that Judge Komada violated defendant's due process rights by ruling on defendant's second post-conviction petition. Defendant's second post-conviction petition alleged, in part, that during defendant's trial and sentencing hearing, Judge Komada was operating under a conflict of interest because he knew the victim and because he had prosecuted defendant for the armed violence conviction that the State used as impeachment evidence during trial and as an aggravating factor during sentencing. During the proceedings on defendant's second post-conviction petition, defendant moved for a substitution of judge, arguing that Judge Komada could not objectively rule on his own alleged conflict of interest. That motion was heard by a different judge, who denied the motion on other grounds and without reaching Judge Komada's conflict of interest in ruling on the second petition. Defendant does not chal-

lenge the denial of that motion. He argues instead that Judge Komada should have recused himself from ruling on defendant's second post-conviction petition.

Relying primarily upon *Murray v. Giarratano*, 492 U.S. 1, 106 L. Ed. 2d 1, 109 S. Ct. 2765 (1989), and *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), the State argues that a defendant in a post-conviction proceeding has no due process right to have his hearing held before an impartial judge. We disagree with the State.

While *Murray* and *Finley* support the proposition that, in a post-conviction proceeding, a defendant is not entitled to the full panoply of constitutional rights that accompany an initial criminal prosecution, this does not mean that a defendant in a post-conviction proceeding is not entitled to due process at all. A fair trial before a fair tribunal is a basic requirement of due process. *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998). This fairness "requires not only the absence of actual bias but also the absence of the probability of bias." *Hawkins*, 181 Ill. 2d at 50. The fairness requirement applies not only to criminal proceedings (*Hawkins*, 181 Ill. 2d at 50), but also to proceedings before administrative agencies and to other civil court proceedings (*Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42, 54-55 (1981)). Further, in rare circumstances after a showing of bias or prejudice, the constitution may require a judge in a post-conviction proceeding to recuse himself. *People v. Thompkins*, 181 Ill. 2d 1, 22 (1998); see also *Steidl*, 177 Ill. 2d at 266 (holding that a judge had to recuse himself from presiding over the defendant's post-conviction petition because he was biased against some of defendant's claims). Given these holdings, we are unable to agree with the State that, in a post-conviction proceeding, the due process clause (see Ill. Const. 1970, art. I, § 2) does not guarantee a defendant a fair trial before a fair tribunal.

18

That, however, does not end our inquiry. A judge must recuse himself from ruling on a motion for substitution of judge for cause only if the motion, on its face, contains specific allegations of prejudice. *People v. Johnson*, 159 Ill. 2d 97, 123 (1994). Similarly, we believe that, when a judge is faced with a successive post-conviction petition alleging a possible conflict of interest, the judge need not recuse himself from considering the successive petition unless the petition, on its face, demonstrates that the claims can be properly raised in a successive post-conviction petition. Just as the rule in *Johnson* is designed to ensure that motions for substitution are not frivolously made (*Johnson*, 159 Ill. 2d at 123), the requirement of a *prima facie* showing that the successive petition is proper ensures that a defendant is not able to obtain a substitution of judge on an otherwise improper successive petition simply by including allegations of a conflict of interest. Further, if the successor petition is not facially proper, the trial court will not consider the substantive merits of the underlying allegations and therefore the question posing the potential conflict of interest will never be reached.

Here, defendant has failed to show that he could properly raise any of the claims in his second post-conviction petition. Consequently, Judge Komada had no need to reach the merits of defendant's allegations of a conflict of interest and was not required to recuse himself. While the prudent course of action for a judge faced with a potential conflict may be to recuse himself (see *People v. Wilson*, 37 Ill. 2d 617, 621 (1967) (explaining that "in certain circumstances a trial judge should recuse himself when it appears that he may be biased or may be a potential witness")), we do not believe that, on the facts presented, such an action was constitutionally mandated.

## CONCLUSION

Because defendant could have raised or did raise each

of the underlying issues during his initial post-conviction proceedings, the trial court properly dismissed defendant's second post-conviction petition.

The judgment of the circuit court of Coles County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, March 28, 2000, as the date on which the sentence of death entered by the circuit court shall be implemented. Defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1996)). The clerk of this court shall send a certified copy of the mandate of this court to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where defendant is confined.

*Affirmed.*

CHIEF JUSTICE FREEMAN, specially concurring:

I strongly disagree with the conclusions reached in today's opinion, particularly that which holds that section 122—1 of the Post-Conviction Hearing Act is a statute of limitation that can be waived by the State on appeal if not first raised in the circuit court. Because I cannot concur in my colleagues' decision on this point, I join only in the judgment of the court.

I ·

Section 122—1 of the Act states that no proceedings can be commenced under the Act after the passage of certain enumerated periods of time, unless the petition "alleges facts showing that the delay was not due to [the petitioner's] culpable negligence." 725 ILCS 5/122—1 (West 1994). The dispositive question in this case is what happens when both the State and the circuit judge fail to notice that a filed post-conviction petition does not comply with the above requirement and the issue is raised for the first time on appeal from an order of dismissal. The court rejects the State's argument that this

section is jurisdictional in nature and, instead, concludes that section 122—1 constitutes a statute of limitation that is waived by the State if not raised in the circuit court. In so doing, my colleagues concede that the present petition was untimely filed and lacked the allegations that would excuse untimeliness as required by the General Assembly. Notwithstanding this defendant's failure to meet the affirmative obligation placed upon him by our legislature, the court concludes that the State cannot raise this issue on appeal because the State did not raise the issue in the circuit court. The effect of this seemingly benign holding is the possibility that a circuit court can, in the future, grant post-conviction relief *even though a defendant has never alleged a lack of culpable negligence* in his or her untimely petition as required by the General Assembly in section 122—1. With respect, I cannot join in a holding that permits such a result.

The question raised here, in my opinion, is best answered by recognizing that section 122—1 confers the circuit court with jurisdiction to grant post-conviction relief if either the time provisions are complied with *or* defendant has alleged justification as to why those provisions were not met. As such, section 122—1 constitutes a condition precedent to the right to bring the statutory action, which relates to subject matter jurisdiction. Subject matter jurisdiction is conferred on courts by the Constitution or by legislative enactment. *Fredman Brothers Furniture v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985); *Knaus v. Chicago Title & Trust Co.*, 365 Ill. 588, 592 (1937). Subject matter jurisdiction cannot be waived, stipulated to, or consented to by the parties. The lack of subject matter jurisdiction may be raised at any time, in any court, by the parties or on the court's own motion. See *Currie v. Lao*, 148 Ill. 2d 151, 157 (1992). This court has noted that "when a court is in exercise of special statutory jurisdiction, that jurisdiction is limited

to the language of the act conferring it and the court has no powers from any other source." *Fredman*, 109 Ill. 2d at 210, citing *Central Illinois Public Service Co. v. Industrial Comm'n*, 293 Ill. 62, 65-66 (1920). Furthermore, "if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court." *Fredman*, 109 Ill. 2d at 210, citing *Demchuk v. Duplancich*, 92 Ill. 2d 1, 6-7 (1982); *Avdich v. Kleinert*, 69 Ill. 2d 1, 6 (1977); *Fitzgerald v. Quinn*, 165 Ill. 354, 360 (1896). Without subject matter jurisdiction, a court's only function is to announce the fact that it lacks jurisdiction and dismiss the cause. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 306 (1998), citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998). In other words, absent subject matter jurisdiction, a court lacks the legal authority to adjudicate the controversy put before it. In the case of the Act, this means that the court is unable to adjudicate whether the petitioner was convicted in a proceeding in which there was a substantial denial of a federal or state constitutional right. This view is supported by both the history of the Act and the precedent of this court.

At common law, a collateral challenge to a criminal conviction was recognized as an action for writ of *coram nobis*. In 1867, this court observed that "[t]his old writ [*coram nobis*] has never been in use in this State, and it has fallen into desuetude even in England. Its place is most effectually supplied by the more summary proceedings, by motion in the court where the error in fact occurred." *McKindley v. Buck*, 43 Ill. 579, 582 (1867). Shortly thereafter, the General Assembly expressly abolished the common law *coram nobis* action. See *People v. Touhy*, 397 Ill. 19, 23-24 (1947) (explaining history of the abolition of the writ). The legislature replaced the common law writ, not with the Act, but with a statutory

remedy which can be presently found in section 2—1401 of the Code of Civil Procedure. See 735 ILCS 5/2—1401 (West 1994); *Touhy*, 397 Ill. at 23-24. It was not until 1949 that the General Assembly enacted the Act. Ill. Rev. Stat. 1949, ch. 38, par. 826 *et seq.* See also A. Jenner, *The Illinois Post-Conviction Hearing Act*, 9 F.R.D. 347 (1949) (setting forth a detailed history of the Act). The legislature created this new remedy in response to criticisms regarding the available methods by which a judgment of conviction could be attacked in Illinois. See *People v. Slaughter*, 39 Ill. 2d 278 (1968); *People v. Erickson*, 161 Ill. 2d 82, 107 (1994) (McMorrow, J., dissenting, joined by Harrison, J.). Along with the statutory *coram nobis* remedy (section 2—1401) and the statutory *habeas corpus* remedy, the Act provides convicted persons in this state with the opportunity to mount a collateral attack upon a final criminal judgment. J. Decker, *"Last Chance" State Judicial Review in Criminal Cases—Illinois' Collateral Attack Remedies: A Call For Principled Jurisprudence*, 38 DePaul L. Rev. 201 (1988). This court, long ago, noted that the purpose of the Act "is to provide a single procedure by which persons within the class specified can obtain a hearing upon the question of whether they were denied due process of law." *People v. Dale*, 406 Ill. 238, 243 (1950). The Act is designed to afford an appropriate remedy for one who asserts that a conviction was obtained in proceedings in which there was a denial of his or her rights under the federal constitution or the Illinois Constitution. *People v. Morris*, 3 Ill. 2d 437, 443-44 (1954).

The foregoing history demonstrates that the Act is a legislative creation with no antecedent in the common law. In light of this fact, the Act should be deemed purely a statutory cause of action, and its requirements should be interpreted in that light. In special statutory proceedings, jurisdiction is acquired only in the manner "pointed

out" by the statute. *People ex rel. Kilduff v. Brewer*, 328 Ill. 472, 480 (1927). The time provision contained in section 122—1, viewed in its entirety, constitutes a condition of the right to maintain the statutory action—not a statute of limitation—and is, therefore, jurisdictional in nature. See *Brown v. Box*, 38 Ill. 2d 80, 82 (1967) (deeming limitation provision in Paternity Act jurisdictional). A jurisdictional limitations period is an absolute requirement; it is not an affirmative defense that is subject to waiver or estoppel. Section 122—1 clearly contemplates that a timely filed petition *or* an untimely petition that contains allegations which establish that the delay in filing was not due to the petitioner's culpable negligence *must* precede the institution of the action. As this court has explained in the past, when addressing a similar question raised with respect to the Wrongful Death Act,

> "Unlike the general Statute of Limitations, this special statute creating the right and giving the remedy *does not merely confer the privilege upon the defendant to interpose a definite time limitation as a bar to the enforcement of a distinct and independent liability, but it defines and limits the existence of the right itself.* In the one case the statute furnishes defendant with a technical defense to which he may resort or not, as he sees fit, while in the other it gives the plaintiff a right conditioned upon its enforcement within a definite time. Hence, while the defendant must plead the general Statute of Limitations or give notice by setting it out in a brief statement under the general issue in order to be protected by it, the reasoning that leads to that result as a matter of pleading has no application when *** the statute confers upon the plaintiff a peculiar right which, if not exercised, ceases to exist by its own limitation." (Emphasis added.) *Hartray v. Chicago Rys. Co.*, 290 Ill. 85, 87 (1919).

This court has consistently recognized that the legislature, having conferred a right of action, "may determine who shall sue and *the conditions under which the suit may be brought.*" (Emphasis added.) *Wilson v. Tromly*, 404 Ill. 307, 310 (1949). We have also consis-

tently adhered to the notion that our General Assembly may attach conditions to the relief it creates. See *Wilson*, 404 Ill. 2d at 311. That being the case, it is the party seeking the statutorily created relief who must " 'bring himself within the prescribed requirements necessary to confer the right of action.' " *Wilson*, 404 Ill. at 311, quoting *Hartray v. Chicago Rys. Co.*, 290 Ill. 85, 87 (1919).

Section 122—1 expressly provides that no proceedings may be commenced after the passage of certain enumerated time periods "unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." 725 ILCS 5/122—1 (West 1994). In other words, section 122—1 establishes what a petitioner must do in order to " 'set the court in motion.' " *Brewer*, 328 Ill. at 481. The General Assembly, by placing the burden on defendant to plead himself within the purview of the statute in order to obtain relief, has, therefore, not seen fit to make the lack of timeliness an affirmative matter that must be raised by the State in order to bar the remedy. The burden, having been placed on the petitioner by the General Assembly, rests on the petitioner, and if the petition is deficient in this respect, the court, *sua sponte*, must dismiss it. Simply put, if a petitioner does not meet this affirmative burden, the circuit court cannot, as a matter of law, entertain the petition and cannot grant the requested relief, no matter how meritorious the asserted constitutional deprivation may be.

Support for this position can be found in *People v. Montgomery*, 45 Ill. 2d 94 (1970). There, the defendant filed an untimely petition, claiming that the delay was due to his mental illness. The circuit judge specifically found that the mental illness claimed by defendant in his petition, and supported by the affidavits attached to it, did not satisfactorily excuse defendant's delay in filing the petition. Nevertheless, the judge ultimately considered the merits of the petition and based his order of dis-

missal on the merits of defendant's claims. In affirming the order of dismissal, this court stated that, notwithstanding the circuit court's dismissal on the merits, the "threshold issue *** must *** be whether Montgomery was barred from proceeding under the Act by virtue of his extended delay in filing, *since no relief may be granted on the merits unless the petition is cognizable under the statute.*" (Emphasis added.) *Montgomery*, 45 Ill. 2d at 96.[3] The court thus looked to defendant's allegations regarding his lack of culpable negligence and found them insufficient, concluding that it was "of the opinion that the petition for relief was properly dismissed, without further hearings, under the applicable limitations provision." *Montgomery*, 45 Ill. 2d at 96. Significantly, nowhere in the *Montgomery* opinion does the phrase "statute of limitations" appear. Instead, the court referred to section 122—1 as a "limitations provision" and spoke in terms of a petition's "cognizability" under the statute. Such references, in my view, demonstrate that, up until today at least, this court has implicitly given section 122—1 a jurisdictional construction.

Notwithstanding the above, my colleagues rely on *People v. Bates*, 124 Ill. 2d 81 (1988), as authority for the proposition that section 122—1 constitutes a statute of limitations. *Bates*, however, did not address the precise issue which we are presented with today, namely, whether the time limitation contained in section 122—1 is jurisdictional or whether it is a statute of limitation. Rather, the court in *Bates* considered whether an amendment to section 122—1 that shortened the time within which to file a petition under the Act could be applied retroactively. This distinction is critical. The court determined that the amendment had retroactive application and that the dismissal of the petition, which did not

[3]There is no indication in the opinion that the State raised this "threshold" issue in the circuit court or on appeal.

include allegations regarding the lack of culpable negligence, required affirmance. In so holding, the court looked to an earlier case, *Orlicki v. McCarthy*, 4 Ill. 2d 342 (1954), in which a similar question was raised with respect to the Dramshop Act. The court reasoned, as did the court in *Orlicki*, that

> "the legislature, having created rights of action under [the Acts], had the corresponding power to repeal those rights. In other words, persons had no 'vested' rights in statutory remedies. [Citation.] Moreover, the power to repeal statutory enactments includes the lesser power to impose or modify time limitations for bringing actions under such acts." *Bates*, 124 Ill. 2d at 85.

My colleagues today seize upon the sentence which immediately follows the above quotation for its conclusion that section 122—1 is a statute of limitation: "Finally, it was noted that statutes of limitation have historically been classified as procedural in character, and that procedural amendments are generally applied retroactively." *Bates*, 124 Ill. 2d at 85. However, the *Orlicki* decision, relied on heavily in *Bates*, contains a detailed discussion concerning the propriety of retroactive application of amendments to jurisdictional "conditions of liability" which were of a procedural nature. See *Orlicki*, 4 Ill. 2d at 350-53. Moreover, the court in *Bates* declined to extend, equitably, the statutory time period for the defendant whose petition was both untimely and lacking in allegations regarding lack of culpable negligence. *Bates*, 124 Ill. 2d at 86-88. "Because [the] petition was not accompanied by any such allegations [regarding culpable negligence], we find that his petition must be dismissed as untimely." *Bates*, 124 Ill. 2d at 88. In this way, the result reached in *Bates* is consistent with the principles espoused in *Montgomery*. Given the fact that the court in *Bates* was not concerned with the narrow question raised by the parties in this case, I do not find its generic use of the term "statute of limitations" persuasive authority

for the court's conclusion that the circuit court had jurisdiction to entertain defendant's petition.

Yet, even if I were to agree that the time provision contained in section 122—1 should be labeled a "statute of limitations," I would still consider the provision to be jurisdictional. As the Seventh Circuit Court of Appeals has aptly noted, "some statutes of limitations are jurisdictional." *Smith v. City of Chicago Heights*, 951 F.2d 834, 838 (7th Cir. 1992) (interpreting Illinois law). This court, too, has stated as much. Statutes of limitation only fix the time within which the remedy for a particular wrong may be sought and, as such, are " 'procedural in nature [citations] and are not designed to alter substantive rights.' " *Fredman*, 109 Ill. 2d at 209, quoting *Wilson v. Bishop*, 82 Ill. 2d 364, 373 (1980). In contradistinction, "statutes which create a substantive right unknown to the common law and in which time is made an inherent element of the right so created, are not statutes of limitation. [Citations.] Such a time period 'is more than an ordinary statute of limitation.' " *Fredman*, 109 Ill. 2d at 209, quoting *North Side Sash & Door Co. v. Hecht*, 295 Ill. 515, 519 (1920).

The history of the Act, as I have set forth above, supports the application of these principles to the case at bar. The Act is a departure from the common law. Moreover, section 122—1 plainly states that no proceedings may be commenced after the passage of the enumerated time periods "unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." 725 ILCS 5/122—1 (West 1994). Thus, a petitioner must do one or the other, *i.e.*, be timely or allege the lack of culpable negligence, in order to commence a proceeding under the Act. The court today seems to be unable or unwilling to accept that section 122—1 is but a single sentence. The phrase which contains the time limits must be construed in tandem with the phrase that excuses

delay if due to a lack of culpable negligence. Time, therefore, *is* an inherent element of the right to the extent that, without allegations of facts which show that the delay was not due to petitioner's culpable negligence, no proceeding may be commenced under the Act.[4] Statutes such as section 122—1 "set forth the requirements for bringing the right to seek a remedy into existence. They do not speak of commencing an action after the right to do so has accrued. They are jurisdictional, not mandatory." *Fredman*, 109 Ill. 2d at 210. This has been the conclusion reached by two districts of our appellate court (see *People v. Caraballo*, 304 Ill. App. 3d 288 (3d Dist. 1999); *People v. Stenson*, 296 Ill. App. 3d 93 (3d Dist. 1998); *People v. Heirens*, 271 Ill. App. 3d 392 (1st Dist. 1995)), and should be our decision today.

My colleagues and I obviously disagree with respect to the applicability of *Bates* to this question and to the issue of whether time is an "inherent" element of the right to post-conviction relief. 189 Ill. 2d at 8. I am willing to acknowledge that judges can and do disagree over the proper application of precedent when resolving questions on appeal, just as they can disagree over subjective concepts such as the inherence or importance of a certain element in a statute. However, in such cases, other judicial considerations usually emerge which justify the

---

[4]That the General Assembly considers time to be an important element in such proceedings would seem beyond dispute given the fact that the General Assembly has, over the years, shortened the time within which such a proceeding may be brought absent the lack of culpable negligence. At one time, the Act allowed for the filing of a petition for up to 20 years after the rendition of a final judgment in a criminal proceeding. Subsequently, the legislature reduced the time period to 10 years and then later reduced the period to the three-year provision we address here today. As of January 1, 1996, the General Assembly again amended the section to require that the petition must be filed within 45 days of the appellant's brief on direct appeal or three years from the date of conviction, whichever is *sooner*.

necessity of adopting one approach over another. And so it is in this case. The Act clearly places a burden upon the petitioner *at the outset* to allege facts establishing his or her lack of culpable negligence. Accordingly, it appears that the General Assembly did not intend to make this provision an affirmative matter to be raised by the State in order to bar the remedy. In other words, it is the petitioner who must affirmatively raise the lack of culpable negligence issue in order to avoid dismissal. Nevertheless, the court asserts that it does

> "not believe that this requirement [of alleging facts which show the lack of culpable negligence in the delay] allows the State to wait until an appeal to raise an *affirmative defense* that the defendant may be able to avoid by amending his petition." (Emphasis added.) 189 Ill. 2d at 11.

Thus, the court has transformed defendant's affirmative burden to raise the lack of culpable negligence into an affirmative defense to be raised by the State. In my view, this amply illustrates the reason why we ought not to construe section 122—1 as a statute of limitation that can be waived by the State. The judiciary simply lacks the authority to transform an affirmative burden, placed upon the petitioner by the General Assembly, into an affirmative defense to be pleaded by the State. My colleagues appear to choose this course of action because they are obviously troubled by the fact that this defendant might have been able to allege the requisite lack of culpable negligence in an amendment had the State raised the issue in the trial court. See 189 Ill. 2d at 11 (noting that the State here "effectively precluded the defendant from seeking to amend his petition to include allegations that he was not culpably negligent in filing his petition"). The concern, therefore, is that section 122—1 has the potential to become a "trump card" of sorts in the hands of the prosecutor. However, section 122—1 is rendered a trump card only because the court today insists on interpreting the provision as a "statute of lim-

itations" that should not "be treated differently from any other." 189 Ill. 2d at 12. If section 122—1 were to be deemed jurisdictional, a petitioner whose untimely petition is dismissed for lack of jurisdiction could return to the circuit court and attempt to take advantage of the "safety valve" by filing a new petition which contains the requisite allegations concerning the lack of culpable negligence. Such a successive petition would not be barred by the doctrine of *res judicata* because a dismissal for lack of jurisdiction does not constitute an adjudication on the merits. Under this approach, the action would proceed in a way that is consistent with the language of the Act (the petitioner must allege and establish his or her lack of culpable negligence for the delay as required under the Act), and the State has not been allowed to "trump" the truly nonculpably negligent petitioner from the opportunity to seek collateral review under the Act.

Further, if a petitioner's failure to allege the lack of culpable negligence could easily be rectified by amendment, as the court intimates, why then does the court not remand this cause to the circuit court with instructions to allow defendant the opportunity to file an amendment and meet the burden placed upon him by the General Assembly? If the matter is not one of jurisdiction, as the court holds, then there is no legal impediment to preclude such an option in this case. Such a course of action would, in fact, be consistent with the court's stated belief that petitioners under the Act "should plead facts demonstrating [their] lack of culpable negligence." 189 Ill. 2d at 12. The court, however, cannot avail itself of a remand alternative because it has decided that section 122—1 operates as an ordinary statute of limitation. Thus, the court leaves itself with no choice but to completely excuse this defendant from complying with the General Assembly's requirement that his petition contain allegations which demonstrate the lack of

culpable negligence in the delay. This result will doubtless provide "incentive" to the State to raise the timeliness question (189 Ill. 2d at 12), but it provides petitioners with little incentive to comply with the Act itself. Moreover, this result also has the potential to allow for the possibility that a circuit court can, in the future, grant post-conviction relief *even though a defendant has never alleged a lack of culpable negligence* in his or her untimely petition as required by the General Assembly in section 122—1. Ultimately, it is these considerations and not the applicability of *Bates* that, in my view, strongly undermine the court's resolution of this issue. I believe that this court lacks the power to make these types of substantive revisions to the Act; therefore, the only legally justifiable conclusion to the question raised in this case is the acknowledgment that section 122—1 is jurisdictional.

Today's decision has additional ramifications that must be addressed. Section 122—1, which precedes all other provisions in the Act, plainly states that *no* proceeding may be commenced under the Act unless the petition is either timely or else contains affirmative allegations that demonstrate the petitioner's lack of culpable negligence in causing the delay. The requirement has been placed on all petitioners, whether they are serving a sentence of imprisonment or are under a sentence of death. The Act, however, requires the circuit court, in a noncapital case, to evaluate a petition in order to determine whether it is frivolous or patently without merit. See 725 ILCS 5/122—2.1(a)(2) (West 1996). This determination is to be made by the court without any input from the State. See 725 ILCS 5/122—5 (West 1996). If the petition is both untimely and fails to contain the required allegations concerning the lack of culpable negligence, should not the circuit court dismiss it pursuant to section 122—2.1? After all, such a petition would

be deficient as a matter of law, as it is both untimely and utterly lacking in the requisite allegations that would serve to excuse the delay. Must the circuit court in such situations overlook the fact that the petition fails to comply with section 122—1 and therefore order it docketed for a response from the State? The principles relied on in today's opinion strongly suggest that the judge, in such a situation, must remain mute with respect to the petition's deficiency and must docket it so that the State can raise the issue, as an "affirmative defense." Under today's opinion, it appears that the court in these situations cannot, *sua sponte*, raise the matter.

Notwithstanding the above, my colleagues

> "caution that we are not limiting the trial court's ability, during the court's initial review of noncapital petitions (see 725 ILCS 5/122—2.1(a)(2) (West 1998)), to dismiss the petition as untimely. The import of our decision is simply that matters relating to the timeliness of a defendant's petition should be first considered in the trial court, either upon a motion by the State or pursuant to the duty imposed upon the trial court by section 122—2.1(a)(2)." 189 Ill. 2d at 11-12.

I am puzzled by these statements. As noted, the Act permits the circuit court to dismiss a noncapital petition without any input from the State whatsoever. If, as my colleagues today hold, the lack of allegations regarding culpable negligence can only be raised by the State, and not a court, then how can a trial judge ever dismiss an untimely petition on his or her own motion, pursuant to the duty imposed upon the trial court by section 122—2.1(a)(2)? I read today's opinion as holding that section 122—1 is to be treated as an ordinary statute of limitation, *i.e.*, an affirmative defense, and not as a jurisdictional prerequisite. Therefore, in noncapital cases, the untimely petition that lacks culpable negligence allegations must be docketed in order to allow the State to put the culpable negligence matter at issue as an affirmative defense. I am confused, therefore, by the court's state-

ment that it is not "limiting" the trial court's initial review of petitions in non-capital cases. The court today clearly is holding that this capital petitioner's failure to plead the requisite lack of culpable negligence must be raised by the State as an affirmative defense, because section 122—1 is not jurisdictional. If the court is correct in its analysis of this question, then the non-capital petitioner's failure to plead the requisite lack of culpable negligence in filing an untimely petition should likewise be an affirmative defense because section 122—1 of the Act requires *all petitioners to be timely or else demonstrate that the delay was not due to their culpable negligence*. Therefore, today's holding does, in fact, "limit" the circuit court's ability to dismiss an untimely petition during its initial review pursuant to section 122— 2.1(a)(2) of the Act. Although my colleagues caution that this is not so, their position on this matter is inconsistent with their analysis of the jurisdictional question. This inconsistency renders the court's conclusion on this issue ultimately unpersuasive. In my view, the overall structure of the Act indicates that the legislature intended for the courts to be able to dismiss untimely petitions that lack the requisite allegations regarding the lack of culpable negligence on their own motion, without input from the State at any time in both capital and non-capital cases. The court today has succeeded in changing the petitioner's affirmative burden into an affirmative matter to be raised by the State, and the State alone, in a way that is contrary to the plain language of the Act. For this reason, I would refrain from adopting the approach endorsed by my colleagues.

In light of the above, I would hold that if a petitioner does not timely file a post-conviction petition and does not allege the lack of culpable negligence for the delay, the court cannot entertain the proceeding. In my view, section 122—1 defines jurisdiction and constitutes a

condition precedent to the bringing of the statutory action. Therefore, it is incumbent on the defendant to comply with it, and it is equally essential that the courts take notice of the issue even when the State does not. Courts, at every level, have an obligation to raise the lack of jurisdiction *sua sponte* and to dismiss a pending action whenever it becomes apparent that jurisdiction does not exist. I, therefore, would affirm the circuit court's dismissal on the basis that the court lacked jurisdiction to entertain the petition.

## II

Although I would affirm the circuit court's dismissal for the reasons set forth in section I of my concurrence, the court today does not. Rather, the court ultimately concludes that no basis exists to disturb the circuit court's judgment because defendant's second post-conviction petition was not "properly brought." 189 Ill. 2d at 12. I recognize that, in light of my position on the jurisdictional question, I need not address these points. Nevertheless, I believe that the court's analysis is not clear in setting forth the standards against which multiple post-conviction actions are judged.

Defendant's initial justification as to why he believes that he can raise these claims in this petition is based on *People v. Brim*, 241 Ill. App. 3d 245 (1993). Yet, he also maintains, in the alternative, that the proceedings during his initial post-conviction action were "fundamentally deficient." The genesis of this argument can be found in language that has routinely appeared in all of our decisions which deal with successive post-conviction petitions, *i.e.*, that such petitions are allowed if or when the proceedings on the original petitions were said to be "deficient in some fundamental way." See 189 Ill. 2d at 12; *People v. Erickson*, 183 Ill. 2d 213, 223 (1998); *People v. Szabo*, 183 Ill. 2d 19, 23 (1998); see also *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992) (and cases cited therein).

Our case law holds that a ruling on an initial post-conviction petition has *res judicata* effect with respect to claims that were raised or could have been raised in the initial petition. *People v. Free*, 122 Ill. 2d 367 (1988). However, as noted above, this court has allowed successive petitions when the proceedings on the original petitions were said to be deficient in some fundamental way. In *Flores*, this court attempted to attach some objective meaning to the amorphous phrase "deficient in some fundamental way." A careful reading of our opinion reveals that the phrase speaks to the notion that the initial proceeding could not have allowed the opportunity for the claims raised in the successive petition to have been heard in that initial forum. *Flores*, 153 Ill. 2d at 274-75. We noted that, in such cases, the ordinary procedural bars that are at play in collateral actions "may be ineffectual in bringing about that finality which ordinarily follows direct appeal and the first post-conviction proceeding." *Flores*, 153 Ill. 2d at 275. The court then undertook a thorough examination of the various types of claims a defendant may attempt to bring in a successive petition. Claims which attempt to seek relief from ineffective assistance of post-conviction counsel in the first proceeding are beyond the scope of the Act and cannot form the basis for relief in a successive action. *Flores*, 153 Ill. 2d at 275-77. Ineffective assistance of counsel claims which could not have been raised in the prior proceeding, however, required a different analysis. *Flores*, 153 Ill. 2d at 277-80. We acknowledged that concerns of "fundamental fairness" colored the inquiry into when the procedural bar could be relaxed in such cases and specifically noted that the federal "cause and prejudice" standard works to accomplish the same goal. *Flores*, 153 Ill. 2d at 278-79. Under this analysis, the court concluded that constitutionally ineffective representation that could not have been raised in the initial

post-conviction proceeding was "cause," and such a claim could be considered in a successive proceeding. *Flores*, 153 Ill. 2d at 279-80. The court also recognized that "cause" is satisfied by constitutionally ineffective assistance of counsel on direct appeal where attorneys were the same on direct appeal and in the prior collateral proceeding. *Flores*, 153 Ill. 2d at 279-80. See also *Erickson*, 183 Ill. 2d at 228 (holding that, in a successive post-conviction petition, one claim of ineffective assistance of direct appellate counsel could be considered because counsel was the same on direct appeal and on the first post-conviction proceeding). We further acknowledged that, even in the absence of cause and prejudice, a court may, "nonetheless, entertain successive claims if necessary to prevent a fundamental miscarriage of justice." *Flores*, 153 Ill. 2d at 279. The court went on to address, on their merits, defendant Flores' claims regarding ineffective assistance of appellate counsel. The court, however, found defendant's third claim, which was not based on ineffective assistance of counsel, barred by *res judicata*. *Flores*, 153 Ill. 2d at 280-81.

Our precedent, therefore, teaches that successive post-conviction petitions must be examined in detail to see if the claims asserted in them are truly barred by *res judicata*. To that end, each claim in a successive petition must be reviewed individually in order to first ascertain whether the claim is barred by *res judicata*. See *Erickson*, 183 Ill. 2d 213. If the claim is found to be barred, the court must then determine whether some reason exists to excuse the bar so as to permit the court to reach the merits of the claim. As I noted above, this court in *Flores* stated that the inquiry into whether a procedural bar will be relaxed in the context of successive petitions turns upon considerations of "fundamental fairness." This court's position on what constitutes "fundamental fairness" was thoroughly set forth in *People v. Owens*, 129 Ill. 2d 303, 317-18 (1989) and bears repeating today:

"Where fundamental fairness requires, the rule of waiver will not be applied in post-conviction proceedings. [Citations.] The Supreme Court in *Wainwright v. Sykes* (1977), 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497, described when it would be necessary for a court to consider the fundamental fairness principle when the prosecutor relies on a claim of waiver. There the Court held that 'fundamental fairness' requires courts to review procedurally defaulted claims in collateral proceedings only when a defendant shows cognizable 'cause' for his failure to make timely objection, and shows 'actual prejudice' flowing from the error now complained of." *Owens*, 129 Ill. 2d at 317.

The court in *Owens* went on to evaluate Owens' claims using the same cause and prejudice standard as that employed by the federal courts in *habeas corpus* proceedings.

Although *Owens* does not speak to the cause and prejudice standard in the context of successive petitions under the Act, it does establish that this court has, in the past, equated the term "fundamental fairness" with the cause and prejudice standard. See *Flores*, 153 Ill. 2d at 278-80 (equating the standard with the concept of "fundamental fairness" in the context of successive petitions under the Act). See also *People v. Whitehead*, 169 Ill. 2d 355, 407 (1996) (Miller, J., specially concurring); *Szabo*, 186 Ill. 2d at 42-43 (Freeman, C.J., specially concurring, joined by Heiple, J.).

In my opinion, the time has come for this court to reaffirm these principles in the context of successive petitions for post-conviction relief brought under the Act.[5] As I stated in my special concurrence in *Szabo*, the cause and prejudice standard provides the best means for determining whether fundamental fairness dictates the

---

[5]It must be pointed out that, with the filing of this opinion, five members of the current court have indicated that they endorse the use of a cause and prejudice standard in the context of post-conviction proceedings—myself and Justices Miller, Bilandic, Heiple and McMorrow.

relaxation of the procedural bar in cases involving multiple petitions for post-conviction relief. In fact, the federal courts utilize the very same standard when evaluating successive *habeas corpus* actions, actions that the federal courts disfavor in much the same way Illinois courts disfavor successive post-conviction actions. In *McCleskey v. Zant*, the United States Supreme Court held that, in order to excuse the failure to raise the claim in an earlier *habeas* proceeding, a petitioner

> "must show cause for failing to raise it and prejudice there-from as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard." *McCleskey v. Zant*, 499 U.S. 467, 494, 113 L. Ed. 2d 517, 545, 111 S. Ct. 1454, 1470 (1991).

The above standard is, as the United States Supreme Court has observed, an "objective one" which provides a " 'sound and workable means of channeling the discretion' " (*McCleskey*, 499 U.S. at 496, 113 L. Ed. 2d at 546, 111 S. Ct. at 1471, quoting *Murray v. Carrier*, 477 U.S. 478, 497, 91 L. Ed. 2d 397, 414, 106 S. Ct. 2639, 2650 (1986)) of the lower courts that entertain collateral attacks against a conviction. See *Szabo*, 186 Ill. 2d at 43 (Freeman, C.J., specially concurring, joined by Heiple, J.) (recognizing that, by acknowledging the cause and prejudice standard in *Flores*, the court attempted to "formulate objective guidelines to which the lower courts could turn in determining what constitutes a fundamental deficiency in prior post-conviction proceedings").

To that end, this court has noted that the term "cause" denotes " ' "some objective factor external to the defense [that] impeded counsel's efforts" to raise the claim' in an earlier proceeding." *Flores*, 153 Ill. 2d at 279, quoting *McCleskey*, 499 U.S. at 493, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470, quoting *Murray v. Carrier*, 477

U.S. 478, 488, 91 L. Ed. 2d 397, 408, 106 S. Ct. 2639, 2645 (1986). Moreover, the United States Supreme Court has identified objective factors that constitute cause to include " ' "interference by officials" ' that makes compliance with the State's procedural rule impracticable, and 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.' [Citation.] In addition, constitutionally '[i]neffective assistance of counsel ... is cause.' [Citation.] Attorney error short of ineffective assistance of counsel, however, does not constitute cause ***." *McCleskey,* 499 U.S. at 493-94, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470. To establish actual prejudice, a petitioner "must show 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Murray,* 477 U.S. at 494, 91 L. Ed. 2d at 412, 106 S. Ct. at 2648, quoting *United States v. Frady,* 456 U.S. 152, 170, 71 L. Ed. 2d 816, 832, 102 S. Ct. 1584, 1596 (1982). Moreover, even if a federal *habeas* petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence. See *Sawyer v. Whitley,* 505 U.S. 333, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992). In the context of the death penalty, a defendant must show "by clear and convincing evidence that but for a constitutional error, no reasonable juror would [have found him or her] eligible for the death penalty under [the applicable state] law." *Sawyer,* 505 U.S. at 348, 120 L. Ed. 2d at 285, 112 S. Ct. at 2523.

In light of the above, I would employ the cause and prejudice standard in cases such as this in order to

determine whether the claims in the successive petition can be considered on their merits. The need for this court to speak definitively as to fundamental fairness is all the more compelling here because the dissenting justice would reach the merits of the contentions raised in defendant's second petition because of undefined "fundamental[ ] flaw[s]" in the defendant's initial post-conviction proceeding. See 189 Ill. 2d at 45 (Harrison, J., dissenting). Regrettably, the court today misses the opportunity to provide the criminal bar with a cogent analytical framework within which successive post-conviction proceedings can be evaluated. A review of our docket over the last year reveals that this is the third case in which a successive petition has been reviewed by this court. See *Erickson*, 183 Ill. 2d 213; *Szabo*, 186 Ill. 2d 9. I am confident that it will not be our last. It is my hope that, in some future case, a majority of this court will provide both practitioners and our lower courts with some guidance in this area by recognizing the utility of employing an objective standard to guide consideration of successive post-conviction petitions.

JUSTICE McMORROW joins in this special concurrence.

JUSTICE BILANDIC, also specially concurring:
I agree that the time limit in section 122—1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 (West 1994)) is a statute of limitations, and that the State waived its right to argue that defendant's petition is untimely by failing to raise the issue in the trial court. I also agree that the issues raised in defendant's second post-conviction petition are waived or barred by *res judicata*. I write separately, however, to set forth the proper method of resolving the claims in this successive post-conviction petition. As explained below, the "cause and prejudice" standard provides the best means for deter-

mining whether to relax the procedural bar in cases involving successive post-conviction petitions.

The Act contemplates the filing of only one post-conviction petition. *People v. Flores*, 153 Ill. 2d 264, 273 (1992); *People v. Free*, 122 Ill. 2d 367, 375 (1988). A defendant, therefore, faces an immense procedural hurdle when bringing a successive post-conviction petition. Section 122—3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 1994); *Flores*, 153 Ill. 2d at 274; *Free*, 122 Ill. 2d at 375-76. Furthermore, a ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *Flores*, 153 Ill. 2d at 274; *Free*, 122 Ill. 2d at 376.

In this case, defendant's second post-conviction petition alleges (1) that the judge for defendant's trial and sentencing hearing, as well as for both post-conviction proceedings, had a conflict of interest because he had prosecuted defendant for the armed violence conviction that the prosecution used as impeachment evidence during trial and as an aggravating factor during sentencing, and that defendant's trial and appellate counsel were ineffective for failing to raise the conflict issue; (2) that the prosecutor had a conflict of interest because she was defendant's attorney in the armed violence case in which the trial judge prosecuted defendant, and that defendant's appellate counsel was ineffective for failing to raise the issue; (3) that defendant's trial counsel was ineffective for failing to investigate, argue, and introduce available evidence that defendant should be found guilty but mentally ill; and (4) that defendant's trial counsel was ineffective for failing to investigate and present available mitigating evidence of defendant's mental deficiency and psychological problems. Defendant has waived the

first three of these claims by failing to raise them in his first post-conviction petition. See 725 ILCS 5/122—3 (West 1994); *Flores*, 153 Ill. 2d at 274; *Free*, 122 Ill. 2d at 375-76. As to the fourth argument, this court already rejected essentially the same argument on direct appeal from the denial of defendant's first post-conviction petition. See *People v. Wright*, 149 Ill. 2d 36, 51 (1992) (*Wright II*). This argument is therefore barred by *res judicata*. See *Flores*, 153 Ill. 2d at 274; *Free*, 122 Ill. 2d at 376.

This court has, however, held that a successive post-conviction petition may be considered where the proceedings on the initial post-conviction petition were deficient in some fundamental way. *Flores*, 153 Ill. 2d at 273-74; see also *Free*, 122 Ill. 2d at 376, citing *People v. Hollins*, 51 Ill. 2d 68, 70 (1972); *People v. Nichols*, 51 Ill. 2d 244, 246 (1972); *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968). This court has held that the strict application of procedural bars may be relaxed where "fundamental fairness" requires. *Flores*, 153 Ill. 2d at 274-75, citing *People v. Gaines*, 105 Ill. 2d 79, 91 (1984); *Hollins*, 51 Ill. 2d at 70; *Slaughter*, 39 Ill. 2d at 285. As this court has previously noted in the context of a first post-conviction petition, "fundamental fairness" requires us to review procedurally defaulted claims in collateral proceedings only when the defendant shows both "cause" for failing to raise the error earlier and "prejudice" resulting from the error. *People v. Owens*, 129 Ill. 2d 303, 317-18 (1989), citing *Wainwright v. Sykes*, 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977). Likewise, in the specific context of a successive post-conviction petition, this court has in the past equated the concept of fundamental fairness with the cause and prejudice standard. *Flores*, 153 Ill. 2d at 278-80; see also *People v. Whitehead*, 169 Ill. 2d 355, 407 (1996) (Miller, J., specially concurring); *People v. Szabo*, 186 Ill. 2d 19, 42-44 (1998) (Freeman, C.J., specially concurring, joined by Heiple, J.).

Moreover, federal courts use the cause and prejudice standard when evaluating successive *habeas corpus* actions. See, *e.g.*, *McCleskey v. Zant*, 499 U.S. 467, 493-94, 113 L. Ed. 2d 517, 544-45, 111 S. Ct. 1454, 1470 (1991). Consequently, this court in *Flores* looked to United States Supreme Court decisions in defining the terms "cause" and "prejudice" in the context of a successive post-conviction petition. The Supreme Court has defined "cause" as an objective factor that impedes an attorney's ability to raise a claim in an earlier proceeding. *Flores*, 153 Ill. 2d at 279, citing *McCleskey*, 499 U.S. at 493, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470. "Prejudice" has been defined as an error which infects the entire trial to such a degree that the resulting conviction violates the defendant's due process rights. *Flores*, 153 Ill. 2d at 279, citing *McCleskey*, 499 U.S. at 493-94, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470. This court has stated that the cause and prejudice test "is similar to, and accomplishes no more than, our fundamental fairness concept." *Flores*, 153 Ill. 2d at 279.

Application of the cause and prejudice test to this case reveals that defendant remains procedurally barred from bringing this second post-conviction petition. Defendant has failed to sufficiently allege cause for failing to raise these claims earlier, and he has failed to sufficiently allege prejudice resulting from the alleged errors. Defendant argues as to each issue that fundamental fairness dictates that this court address his claims. In this regard, however, defendant merely claims that the attorneys who represented him on direct appeal were the same attorneys who represented him during the initial post-conviction proceedings. This court has implicitly recognized that a defendant may show cause for failing to raise in a first post-conviction petition an ineffective assistance of appellate counsel claim, where the same attorneys who represented defendant on direct appeal also

represented defendant during the initial post-conviction proceedings. See *Flores*, 153 Ill. 2d at 281-82. This situation establishes cause because it would be unreasonable to expect counsel to argue his or her own incompetency. *Flores*, 153 Ill. 2d at 282.

In any event, as the majority discusses, the record refutes defendant's claim that the attorneys who represented defendant on direct appeal were the same attorneys who represented defendant during the initial post-conviction proceedings. On direct appeal, defendant was represented by attorneys from the office of the State Appellate Defender. During the trial court proceedings on defendant's first post-conviction petition, however, the Vermilion County public defender represented defendant.

As a final matter, defendant also appears to argue that fundamental fairness requires us to consider his second post-conviction petition because the judge for defendant's trial, sentencing hearing, and both post-conviction proceedings should have recused himself from ruling on defendant's first post-conviction petition. According to defendant, the judge could not impartially rule on defendant's first post-conviction petition because the petition included an allegation that one of defendant's trial attorneys was ineffective, and that this attorney had previously worked for the judge as an assistant State's Attorney when the judge was the State's Attorney. As the majority discusses, the judge was not required to recuse himself. The mere fact that a judge has a relationship with an attorney involved in the case is not sufficient to establish bias. See *People v. Steidl*, 177 Ill. 2d 239, 264 (1997). Thus, this argument in no way warrants a relaxation of the procedural bar in this case.

For the foregoing reasons, I concur in the ultimate resolution of this case. I write separately to explain that the cause and prejudice standard provides the best means for determining whether to relax the procedural bar in cases involving successive post-conviction petitions.

JUSTICE HARRISON, dissenting:

I agree that the State has waived its right to challenge the timeliness of defendant's second post-conviction petition. Contrary to the majority, however, I do not believe that the trial court acted properly in dismissing that petition. Even if the issues asserted in the petition were raised or could have been raised in defendant's initial post-conviction proceedings, those proceedings were fundamentally flawed. Accordingly, defendant should not be precluded from seeking relief in a successive post-conviction proceeding. *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992).

Where, as here, a defendant seeks relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1994)), he is entitled to an evidentiary hearing if the allegations in his petition make a substantial showing of a deprivation of rights under the United States and/or Illinois Constitutions. In determining whether an evidentiary hearing is required, the circuit court must take all well-pleaded facts in the petition and affidavits as true. *People v. Coleman*, 183 Ill. 2d 366, 378 (1998). If the circuit court dismisses the petition without an evidentiary hearing, as the circuit court did in this case, its assessment of the sufficiency of the petition enjoys no deference on appeal. Rather, the judgment of the circuit court is subject to plenary review. *Coleman*, 183 Ill. 2d at 388-89.

Based upon the well-pleaded allegations in defendant's petition and supporting affidavits, I believe that defendant did make a substantial showing that his constitutional rights were violated. Most significant is defendant's charge that he was denied due process by the trial judge's refusal to recuse himself from the case. Due process requires a judge to recuse himself or herself where actual bias exists (*People v. Hall*, 157 Ill. 2d 324, 332 (1993)) or where his or her hearing the case would

create the appearance of partiality (*In re Murchison*, 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S.Ct. 623, 625 (1955)). Those circumstances were present here.

Defendant and the trial judge had a preexisting adversarial relationship. Before sitting on this case, the trial judge served in the State's Attorney's office and had successfully prosecuted defendant for armed violence. The judge then used that same conviction as an aggravating factor in imposing the death sentence in this case. The result, in effect, is that defendant was sent to the executioner by the same man responsible for securing the conviction that made him death eligible. This constitutes a fundamental departure from the constitutional promise of an unbiased tribunal.

I note, moreover, that when the trial judge prosecuted defendant, he agreed to a plea bargain which permitted defendant's release on probation after a relatively short period of time. It was while defendant was on probation for that offense that he committed the crimes at issue in this case. The judge was aware of these circumstances, and it would not be unreasonable to assume that his decision to sentence defendant to death was influenced by some sense of personal responsibility for having placed defendant in a position where he was able to kill. At the very least, the situation presented " 'a possible temptation such that the average person, acting as judge, could not hold the balance nice, clear and true between the State and the accused.' " *People v. Coleman*, 168 Ill. 2d 509, 540-41 (1995), quoting *People v. Del Vecchio*, 129 Ill. 2d 265, 275 (1989).

This is the second time in as many years that we have had to deal with this trial judge's failure to recuse himself from a capital case involving a post-conviction challenge. In *People v. Steidl*, 177 Ill. 2d 239 (1997), as here, the judge denied the post-conviction petition without an evidentiary hearing. In that case, however,

our court reversed and remanded for an evidentiary hearing before a different judge, holding, *inter alia*, that the judge should have recused himself from the case because his long-term professional association with defendant's original trial attorney prevented him from making an unbiased assessment of defendant's claim that the attorney was ineffective. *Steidl*, 177 Ill. 2d at 265-66. The conflict in this case is no less serious than the one we condemned in *Steidl*. If anything, the compromise in this defendant's due process rights is even more egregious.

Defendant's due process problems were not limited to the bias of the trial judge. Besides having been tried and sentenced to death by his former prosecutor, defendant was also prosecuted by the attorney who formerly served as his defense counsel. The prosecutor, who was directly involved in defendant's capital sentencing hearing, was the same lawyer who had unsuccessfully defended defendant against the armed violence charge which the trial judge prosecuted while he was State's Attorney. Where an attorney provides direct representation to a defendant, has a significant role in the defendant's case, and is privy to the defendant's confidences, that attorney may not thereafter serve as a prosecutor in proceedings against his former client. That is so not only when the subsequent proceedings involve the same offense for which the attorney originally provided representation (see *People v. Courtney*, 288 Ill. App. 3d 1025, 1031-33 (1997)), but also when the proceedings are related as they were here. Because the armed violence conviction was integral to obtaining the death sentence, the attorney's prior representation of defendant on the armed violence charge created a *per se* conflict which should have prevented participation by her and her office in defendant's subsequent prosecution for capital murder.

For the foregoing reasons, I would reverse the judg-

ment of the circuit court and remand the cause for appointment of a special prosecutor to represent the State and for an evidentiary hearing before a different judge. I would also direct the circuit court to set aside defendant's sentence of death, regardless of the outcome of the evidentiary hearing. For the reasons set forth in my dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), this state's present death penalty law does not meet the requirements of the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) or article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Accordingly, even if the circuit court determines that defendant's post-conviction petition must fail on the merits, defendant's death sentence cannot stand. At a minimum, defendant must be given a sentence other than death. I therefore dissent.