No. 2--99--0994

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) No. 90--CF--2176

v. )

)

OSCAR PARHAM, ) Honorable

  ) John R. Goshgarian and  

) George Bridges,

Defendant-Appellant. ) Judges, Presiding.

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Oscar Parham, presently serving a term of natural life in prison for murder, appeals the trial court's summary dismissal of his petition brought under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 
et seq.
 (West 1998)). Defendant's direct appeal was unsuccessful, and his first postconviction petition was dismissed without a hearing.  We affirm. 

BACKGROUND 

Following a jury trial, defendant was convicted of two counts of first-degree murder and sentenced to life imprisonment.  In the trial court, d
efendant, by counsel, filed the postconviction petition at issue here.  Before the State's right to respond to the petition under the Act 
was triggered, the trial court filed a written order and opinion dismissing the petition without a hearing because it was "frivolous and patently without merit because not timely filed."  The court noted that defendant was convicted eight years before he filed the petition and he did not attempt to demonstrate that the delay in filing was not due to his "culpable negligence."  Accordingly, the court found that the petition was untimely under section 122--1(c) of the Act (725 ILCS 5/122--1(c) (West 1998)).    

In this timely appeal, defendant argues that the trial court's dismissal of his petition as untimely was erroneous because "limitations is an affirmative defense, not at issue until raised by the [S]tate in a responsive pleading," and that the State waived its timeliness objection by not responding to his petition in the trial court.  Defendant's other claims will be dealt with in an unpublished portion of this decision pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23).  For the reasons provided below, we affirm the trial court's summary dismissal of defendant's postconviction petition.  
 

ANALYSIS

Section 122--1(c) of the Act provides:

"No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."  725 ILCS 5/122--1(c) (West 1998).

The petitioner has the burden of establishing that a delay in filing a postconviction petition was not due to his culpable negligence.  See 
People v. Van Hee
, 305 Ill. App. 3d 333, 336 (1999).  

Section 122--2.1(a) of the Act requires the trial court to review a petition and file an order within 90 days after the petition is filed and docketed ("initial review").  725 ILCS 5/122--2.1(a) (West 1998).  Section 122--2.1(a)(2) provides that, if the petitioner is under a sentence of imprisonment and the court finds that the petition is frivolous or patently without merit, then the court may enter a written order stating so, supported by findings of fact and conclusions of law.  725 ILCS 5/122--2.1 (a)(2) (West 1998).  If the court does not dismiss the petition, then it shall order that the petition be docketed for further consideration.  725 ILCS 5/122--2.1(b) (West 1998).  The State must respond within 30 days or such further time as the court may set.  725 ILCS 5/122--5 (West 1998).  The State is not permitted to respond to the petition during its initial review by the trial court; at this stage "the circuit court considers the petition independently, without any input from either side."  
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).  Appellate review of a trial court's summary dismissal of a postconviction petition is 
de novo
.  See 
People v. Coleman
, 183 Ill. 2d 366, 388 (1998).    

The trial court dismissed defendant's petition during its initial review, before the State had the opportunity to respond.  The trial court based its dismissal partly on its finding that the petition was untimely under section 122-1(c) of the Act.  Although it had no occasion to raise a timeliness objection to the petition in the trial court, the State asks us to affirm the trial court's 
sua sponte
 finding of untimeliness.  Defendant concedes that his petition is untimely, but he contends that the timeliness of his petition is not properly before this court.  Defendant argues that the trial court had no authority to dismiss his petition as untimely in the absence of the State's motion to dismiss on that ground and that the State has waived its timeliness objection by not raising it in the trial court.  Defendant cites 
People v. Wright
, 189 Ill. 2d 1 (1999), for the proposition that the time restriction in section 122-1(c) constitutes not a jurisdictional bar but a statute of limitations that the State must affirmatively plead or waive.      

The State cites 
Wright
 for the opposite conclusion that 
a trial court has the authority to dismiss a petition as untimely during its initial review despite the fact that the State can never raise a timeliness objection during that initial review.  We agree with the State's reading of 
Wright
. 

Unlike the petition under review here, the petition in 
Wright
 survived the initial review stage, giving the State the opportunity it did not have in this case to respond to the petition.  
Wright
, 189 Ill. 2d at 5.  The State successfully sought to dismiss the petition, but not on timeliness grounds.  
Wright
, 189 Ill. 2d at 5, 11.  On appeal, the defendant did not contend that the petition was timely but instead asserted that the State had waived its timeliness objection by not bringing it before the trial court.  
Wright
, 189 Ill. 2d at 10-11.  The court agreed, holding that the time limit found in section 122--1(c) is a statute of limitations rather than a jurisdictional bar to a court's review of a petition and that the State had waived the timeliness objection by failing to bring it earlier.  
Wright
, 189 Ill.2d at 10.       

The court continued as follows: 

"Here, although the facts support the conclusion that defendant did not file his petition within the time limits found in section 122--1, that section allows a defendant to file a petition outside the limitations period if the late filing is not due to the defendant's culpable negligence. [Citation].  By not raising this issue until the cause was on appeal, the State has effectively precluded defendant from seeking to amend his petition to allege facts demonstrating that the late filing was not caused by his culpable negligence.  While we recognize that section 122--1 requires the defendant to allege facts demonstrating a lack of culpable negligence, we do not believe that this requirement allows the State to wait until an appeal to raise an affirmative defense that the defendant may be able to avoid by amending his petition."  
Wright
, 189 Ill. 2d at 11.   

The court then added this proviso:

"In reaching this conclusion, we caution that we are not limiting the trial court's ability, during the court's initial review of noncapital petitions [citation], to dismiss the petition as untimely.  The import of our decision is simply that matters relating to the timeliness of a defendant's petition should first be considered in the trial court, either upon a motion by the State or pursuant to the duty imposed upon the trial court by section 122--2.1(a)(2)." 
Wright
, 

189 Ill. 2d at 11-12.

Simple or not, the foregoing 
Wright
 analysis prompted a strongly worded special concurrence that foreshadowed the confusion  and disagreement that now exist among our appellate districts on how to construe 
Wright
.  See 
Wright
, 189 Ill. 2d at 19-40 (Freeman, J., specially concurring).  

The First District held in 
People v. Lopez
, 1--99--1653, slip op. at 11 (December 6, 2000), that the trial court may, during its initial review, "summarily dismiss an untimely petition as 'frivolous' where the allegations, taken as true, do not show a lack of culpable negligence in failing to file a timely petition."

The Second District noted in 
People v. Huffman
, 315 Ill. App. 3d 611, 613 (2000), that the plain language of the Act requires the dismissal of an untimely petition unless the defendant alleges facts showing the delay was not occasioned by his culpable negligence.

The Third District in 
People v. Arias
, 309 Ill. App. 3d 595, 597 (2000), held that if timeliness is not addressed by the trial court then it cannot be addressed in the appellate court.

The Fourth District in 
People v. Boclair
, 312 Ill. App. 3d 346, 350 (2000), 
leave to appeal granted
, 189 Ill. 2d 690 (2000), held that the appellate court had a responsibility to address the timeliness issue even if the trial court had not.  Later, in 
People v. Harden
, 316 Ill. App. 3d 695, 697-98 (2000), the Fourth District observed that 
Wright
 makes it a "abundantly clear" that the trial court may consider 
sua
 
sponte
 the time limits of a postconviction petition during its initial review.

Finally, in the culmination of a line of cases (see 
People v. Hill
, 313 Ill. App. 3d 362 (2000); 
People v. Johnson
, 312 Ill. App. 3d 532 (2000); 
People v. McCain
, 312 Ill. App. 3d 529 (2000)),
 the Fifth District held in 
People v. Whitford
, 
314 Ill. App. 3d 335, 343 (2000
),
 that the trial court may not consider the timeliness of the petition during the court's initial review. 
  

To explain our holding we now will examine the foregoing cases.  First, we agree with the First District's holding in 
Lopez
.  In 
Lopez
, the trial court during its initial review (
i.e.
, before the State had an opportunity to respond) dismissed the defendant's petition as untimely.  
Lopez
, slip op. at 1
.  
Lopez
 held that the trial court may, during its initial review, "summarily dismiss an untimely petition as 'frivolous' where the allegations, taken as true, do not show a lack of culpable negligence in failing to file a timely petition."  
Lopez
, slip op. at 11.  While we agree with the holding in 
Lopez
, we disagree with the First District's observation in 
Lopez
 that 
Wright
 said "the trial court is free to consider untimeliness of the petition during its initial review, 'either upon a motion by the State or pursuant to the duty imposed upon the trial court by section 122--2.1(a)(2).' " (Emphasis omitted.) 
Lopez
, slip op. at 6-7, quoting 
Wright
, 189 Ill. 2d at 11-12.  
Lopez
 has read too much into the 
Wright
 holding; the pivotal language that 
it quotes from 
Wright
 does not indicate when the State first may make a motion to dismiss a postconviction petition on timeliness grounds.  While nowhere in 
Wright
 is there an express statement that the State may 
not
 make a motion to dismiss on timeliness grounds during the initial review, there also is no evidence in the opinion of an overt or implied overruling of the supreme court's recent holding that, during the initial review of a petition, "the circuit court considers the petition independently, 
without any input from either side
" (emphasis added)  (
Gaultney
, 174 Ill. 2d at 418).  
In our view, 
Wright
 holds that the trial court can consider timeliness 
sua
 
sponte
 during the initial review or upon a motion by the State 
at a later time
.  See 
Wright
, 189 Ill. 2d at 11-12.

We have not yet had occasion to address this issue squarely.  Our closest opportunity was in 
People v. Huffman
, 315 Ill. App. 3d 611 (2000).  In 
Huffman
, the court upheld the trial court's dismissal of the defendant's petition as untimely, observing that the plain language of the Act requires the dismissal of an untimely petition unless the defendant alleges facts showing the delay was not caused by his negligence.  
Huffman
, 315 Ill. App. 3d at 613.  However, as the court noted, the case before it differed from 
Wright
 in that the State had seized the opportunity it did not seize in 
Wright
 to raise the issue of timeliness before the trial court.  
Huffman
, 315 Ill. App. 3d at 613.  In both 
Wright
 and 
Huffman
, the petition had survived the trial court's initial review which, as noted, occurs without the State's participation.  Thus,  in both 
Wright
 and 
Huffman
 the State participated in the trial court proceedings that were the subject of appeal.  In 
Wright
, the supreme court found that the State's voluntary failure to raise timeliness in the trial court constituted waiver.  Unlike 
Wright
, in 
Huffman
 the State did raise its timeliness objection as soon as the State was allowed to participate in the trial court proceedings, 
i.e.
, after the petition survived the court's initial review.  Thus, 
Huffman
 did not address whether the trial court could have considered
 the timeliness of a petition 
sua
 
sponte
 during its initial review.  
Huffman
, 315 Ill. App. 3d at 613-14.  

The Third District in 
Arias
, 309 Ill. App. 3d 595, where the "circuit court dismissed the petition at the first stage of the proceedings without the circuit court ruling on its timeliness,"  concluded that "[u]nder 
Wright
 *** timeliness ha[d] been waived."  
Arias
, 309 Ill. App. 3d at 597.  By these remarks, the court clearly assumed that the circuit court could have ruled on the petition's timeliness 
sua
 
sponte
.  We do not believe the appellate court would have grounded its ruling on the trial court's failure to do something which the appellate court believed the trial court had no power to do anyway.  Thus, 
Arias
 adhered to the 
Wright
 mandate by concluding that timeliness cannot be addressed for the first time on appeal.     

We disagree with the First District's observation that, in 
Arias
, the Third District "took 
Wright
 to mean the failure of the State to raise timeliness of the petition at the first stage waives the issue, since the time limitations in the Act should be considered an affirmative defense."  
Lopez
, slip op. at 6, citing 
Arias
, 309 Ill. App. at 597.  Contrary to the First District's reading of 
Arias
, the Third District does not even mention in 
Arias
 that the State did not raise a timeliness objection in the trial court, much less ascribe any consequence to that fact.  See 
Arias
, 309 Ill. App. 3d at 597.

In 
Boclair
, the Fourth District encountered the same situation that the Third District had in 
Arias
, but came to a different conclusion.  The trial court had dismissed the petition during the initial review, but not on timeliness grounds.  
Boclair
, 312 Ill. App. 3d at 347.   Unlike 
Arias
, 
Boclair
 held that the appellate court had the responsibility to address the timeliness issue even if it had not been addressed in the trial court.  
Boclair
, 312 Ill. App. 3d at 350.  
Boclair
 distinguished 
Wright
 by noting that the  
Wright
 court had addressed a situation where the State had had an opportunity to raise timeliness in the trial court because the petition had survived the initial review.  
Boclair
, 312 Ill. App. 3d at 350.  
Boclair
 noted that it was reviewing a situation where the petition had not survived the initial review (although it was dismissed by the trial court on grounds other than timeliness) and thus the State had not participated.  
Boclair
, 312 Ill. App. 3d at 350.  
Boclair
 held that the issue of timeliness can be addressed for the first time on appeal as long as the case was dismissed during the initial review by the trial court, where the State did not participate.  
Boclair
, 312 Ill. App. 3d at 350.  
Boclair
 addressed only part of the concern identified in 
Wright
, 
i.e.
, that the State not be allowed voluntarily to wait until appeal to raise timeliness.  Nevertheless, 
Boclair
 failed to comport with 
Wright
 because the timeliness objection was raised and decided for the first time on appeal.

Later, in 
People v. Harden
, 316 Ill. App. 3d 695, 698 (2000), the Fourth District observed that 
Wright
 makes its abundantly clear that the trial court may consider 
sua
 
sponte
 the timeliness of a postconviction petition during its initial review "at least where *** the defendant had not alleged that the untimeliness is not due to his culpable negligence."

Finally, the Fifth District repeatedly has held that trial courts may not consider the timeliness of petitions during the initial review phase.  See 
Whitford
, 314 Ill. App. 3d at 343.  The Fifth District held that 
Wright
's affirmation of the authority of a trial court to dismiss a petition 
sua
 
sponte
 as untimely during the initial review is 
dicta
 and "not controlling."  
Whitford
, 314 Ill. App. 3d at 341, citing 
Wright
, 189 Ill. 2d at 11.

We agree with the First District in 
Lopez
 and the Fourth District in 
Harden
 and hold that a trial court may, on its own initiative, consider the timeliness of a petition during its initial review of that petition pursuant to section 122--2.1(a)(2) of the Act. Our holding satisfies 
Wright
's mandate that the  timeliness of a petition be addressed first in the trial court, either by the trial court 
sua sponte
 during its initial review of the petition or upon the State's motion if the petition survives the initial review.     

In so ruling, we note that the holding in 
Wright
 plainly was structured by the court's desire to cure a particular inequity it perceived in the facts before it.  In 
Wright
, the petition survived the trial court's initial review, and, although the State thereafter filed a motion to dismiss the petition, it failed to seize its opportunity to raise a timeliness objection before the trial court.  
Wright
, 189 Ill. 2d at 5.  The State first raised its timeliness objection on appeal.  
Wright
, 189 Ill. 2d at 5.  The supreme court was concerned that a decision 
not
 to find that the State had waived its timeliness objection in these circumstances would have permitted the State in all cases "to wait until an appeal to raise an affirmative defense that the defendant may be able to avoid by amending his petition."  
Wright
, 189 Ill. 2d at 11.  Assuring that its intent only
 was to insure "that matters relating to the timeliness of a defendant's petition *** first be considered in the trial court," the court emphasized that it was not limiting "the trial court's ability, during the court's 
initial review
 of noncapital petitions [citation], to dismiss the petition as untimely."  (Emphasis added.)
 
Wright
, 189 Ill. 2d at 11.   

The court then specified two means whereby timeliness could be considered in the trial court: (1) on the State's motion (which can occur only
 after the initial review phase); or (2) "pursuant to the duty imposed upon the trial court by section 122-2.1(a)(2)."  
Wright
, 189 Ill. 2d at 11-12.  We regard this language as a clear affirmation of the trial court's power to consider 
sua sponte
 the timeliness of a petition during its initial review of the petition. 

Given that the court's design in 
Wright
 was both to ensure that the timeliness of a petition first is considered in the trial court and to prevent the State's voluntary relinquishment of its opportunity to raise a timeliness objection in the trial court from thwarting this design, we find that a trial court's 
sua sponte
 dismissal of a petition as untimely during its initial review, as happened in this case, is entirely consistent with that design and 
 appropriate.  The case before us does not raise the concerns mollified in 
Wright
.  Per 
Wright
's mandate, the timeliness of defendant's petition here first was considered in the trial court.
 During the initial review, before the State had an opportunity to respond, the trial court dismissed the petition without a hearing, indicating in its written order that it found the petition untimely.  Defendant appealed the summary dismissal to this court.  The State asks us to affirm the trial court's dismissal of the petition as untimely.  We refuse to find, as defendant asks, that the State waived its timeliness objection where it simply had no opportunity to raise it before this appeal.  "Waiver" is the "intentional or voluntary relinquishment of a known right."  Black's Law Dictionary 1751 (4th ed. 1968).  
We cannot say that a party waived an objection which, through no fault of its own, it had no opportunity to raise under the controlling rules of procedure.    
 

To label simply as 
dicta
 the 
Wright
 court's affirmation of the trial court's authority to dismiss a petition as untimely during its initial review, as does the Fifth District (see 
Whitford
, 314 Ill. App. 3d at 341),
 is only to begin an analysis of that affirmation's import.  The fact that the court could have decided the issues in 
Wright
 without including its remarks on the permissible grounds for summary dismissal of a petition is not dispositive.   A declaration of opinion upon a point argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, is judicial 
dictum
 to be accorded "much weight" and disregarded only if erroneous.  
Cates v. Cates
, 156 Ill. 2d 76, 80 (1993).  Judicial 
dictum
 is contrasted with 
obiter dictum
,  which is a "remark or opinion uttered by the way," and thus as a general rule is not binding authority.  
Cates
, 156 Ill. 2d at 80.  In 
Whitford
, the Fifth District does not reference this crucial distinction.  See 
Whitford
, 312 Ill. App. 3d at 341.       

We believe that the court in 
Wright
 viewed its remarks about

the trial court's authority to dispose of a postconviction petition during its initial review pursuant to section 122--2.1(a)(2) as part of its holding in the case.  In ruling that untimeliness is an affirmative defense that the State must plead or waive and then applying this ruling to hold that the State had waived its timeliness objection by failing to take the opportunity to raise it at the trial level, the court recognized that it had raised a critical question: may a trial court ever properly dismiss a postconviction petition as untimely during the court's initial review of that petition given that the State is not allowed input during that process and thus cannot raise a timeliness objection?  See 
Wright
, 189 Ill. 2d at 7-12.  The court, expressly disavowing an intention to abrogate "the trial court's ability, during the court's initial review of noncapital petitions [citation], to dismiss the petition as untimely," answered this question unambiguously.  
Wright
, 189 Ill. 2d at 11. 

The court's declaration was not academic.  After deciding an issue raised by the parties in a manner that impliedly eliminated 
the trial court's ability to consider the timeliness of a postconviction petition during its initial review of that petition, the court explicitly clarified that holding with an affirmative and decisive pronouncement.  The clarification was part of the holding.  Therefore, we view as judicial 
dictum
 the 
Wright
 court's affirmation of the authority of a trial court to dismiss a postconviction petition as untimely during its initial review.  Accordingly, we will disregard that affirmation only if we find it erroneous.  See 
Cates
, 156 Ill. 2d at 80. 

We do not find that pronouncement erroneous. We disagree with the Fifth District's reasoning in 
Whitford
 that, because the time limit that section 122--1 imposes on postconviction petitions is a statute of limitations, the trial court 
never can consider the timeliness of a petition during its initial review of the petition.  See 
Whitford
, 314 Ill. App. 2d at 342-43.  As our preceding discussion concerning 
dicta
 revealed, labels sometimes
 are indeterminate.  Legal analysis that relies too heavily on a label, rather than looking to the law itself, quickly
 can become flawed.  Flawed analysis can lead to widely divergent interpretations and pronouncements such as we have seen above.

In analyzing section 122--1(c), 
Wright
 observed that it had "more in common with statutes of limitations than with statutes conferring jurisdiction."  
Wright
, 189 Ill. 2d at 8.  Unfortunately, 
Wright
 did not stop there and went on to say that section 102--1(c) was a statute of limitations, and some subsequent interpretations of 
Wright
 seized upon that label.  In so doing, those courts have ignored the actual 
Wright
 analysis (
i.e.
, the "more in common" language) and have disregarded other clear language of 
Wright
 as 
obiter dictum
 in order to pay heed to the label "statute of limitations."  This label, notably, does not appear anywhere in the Act.
  A review of the analysis in 
Wright
 indicates the court was not certain that "statute of limitations" was the proper category for the time limit.  For example, if the time limit in section 122--1(c) is a statute of limitations in the full sense, then it would be the State's burden to plead all facts constituting a petitioner's noncompliance with the time limit, including the existence of the petitioner's culpable negligence.  Yet, as 
Wright
 holds, it is expressly the 
petitioner's
 burden to prove the 
absence
 of culpable negligence.  See 
Wright
, 189 Ill. 2d at 12 (holding that a petitioner "should plead facts demonstrating his lack of culpable negligence").   

The analysis in 
Wright
 clearly implies that the time limit does not possess 
all
 features of a typical statute of limitations.  Focusing, as we should, on the language of the Act itself rather than adhering to a label, we note that the time limit in section 122--1(c) has a hybrid nature that allowed the 
Wright
 court to find an exception to this putative statute of limitations for the court's initial review of a petition.  Simply put, our view is that the legislature is free to create a provision that carries some of the qualities of a typical statute of limitations but not all of those qualities.  Such a hybrid provision reasonably could be labeled a "statute of limitations" for convenience.  See 
Wright
, 189 Ill. 2d at 27 (Freeman, J., specially concurring), citing 
Smith v. City of Chicago Heights
, 951 F.2d 834, 838 (7th Cir. 1992) (interpreting Illinois law and referring to provisions that impose jurisdictional bars on actions as "statutes of limitations").      
    Of course, reasonable minds may dispute the soundness of an exception to this putative statute of limitations for the court's initial review of a petition.  We recognize that it is never appropriate for a court to read into a statute exceptions, conditions, and limitations that flout the plain legislative intent. See 
Eagan v. Chicago Transit Authority
, 158 Ill. 2d 527, 532 (1994).  
At the same time, however, we must acknowledge that the supreme court's interpretation of a statute is considered part of the statute itself unless and until the legislature amends the statute contrary to the interpretation.  See 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 387 (1998).  Even if we considered it within our authority to question an unambiguous interpretation of the Post-Conviction Act by our supreme court, we would find no plain expression of legislative intent that the court in 
Wright
 disregarded in ruling that the trial court has power to dismiss a postconviction petition as untimely during its initial review even though the State can bring no motion regarding the petition during that review. 

As the timeliness of defendant's petition was considered at the trial level, and the State, although having no opportunity to raise a timeliness objection in the trial court because the petition was summarily dismissed, has asked us to affirm the trial court's 
sua
 
sponte
 finding that the petition is untimely, we address the timeliness of the petition.  As noted, defendant does not deny that his petition was untimely.  Nor does he offer a substantiated reason why the delay was not due to his culpable negligence.  To show the absence of culpable negligence, a petitioner must allege facts "justifying the delay in filing."  
People v. Bates
, 124 Ill. 2d 81, 88 (1988).  "Freedom from culpable negligence is very difficult to establish."  
People v. Burris
, 315 Ill. App. 615, 617 (2000).  

Defendant claims that he possesses "newly discovered evidence"

regarding the veracity of accomplice and State’s witness Ronald Walker’s admission at defendant’s trial that his testimony against defendant was in exchange for a plea of guilty to armed violence and a recommendation for 20 years’ imprisonment.  Defendant does not, however, indicate even the general time frame in which he discovered this evidence.  He merely 
states that he has learned from "multiple sources" that Walker's attorney promised Walker before he testified at defendant's trial that he would receive imprisonment of 6 years instead of 20 years in exchange for his testimony against defendant.  Defendant's lack of specificity precludes us from finding that his delay in bringing this claim of perjury by Walker was not due to his own culpable negligence.  See 
Huffman
, 315 Ill. App. 3d at 614 (finding burden of proving freedom from culpable negligence not met because the defendant "did not allege any specific dates of when he learned of the allegedly new evidence").

      Defendant also fails to explain why he waited until his second postconviction petition to argue that his trial attorney provided ineffective assistance of counsel for failing to impeach State’s witness David Caples more thoroughly and for failing to inform defendant of the risks of going to trial.  Defendant blames appellate counsel for not pressing these claims on direct appeal from his judgment, but he neglects to explain why he did not raise these issues in his first postconviction petition, which he drafted 
pro se
 and which was denied
 summarily pursuant to section 122--2.1(a)(2) of the Act 
before
 he was entitled to the assistance of counsel.  See 725 ILCS 5/122--4 (West 1998) (providing that survival of the initial review period under section 122--2.1 is a prerequisite to appointment of counsel).  A defendant's ignorance of procedures governing postconviction petitions does not excuse the untimely filing of a postconviction petition.  See 
People v. Perry
, 293 Ill. App. 3d 113, 115-16 (1997), citing 
People v. Diefenbaugh
, 40 Ill. 2d 73, 74 (1968).  Defendant has no attorney to blame for his decision not to bring these claims in his first postconviction petition.       

In sum, we find that the trial court properly considered the timeliness of defendant's petition during its initial review of the petition under section 122--2.1 of the Post-Conviction Hearing Act and correctly dismissed the petition as untimely.
 

Therefore, we affirm the circuit court's dismissal of defendant's postconviction petition and, accordingly, affirm his conviction and sentence.

[The following material is nonpublishable under Supreme Court Rule 23.]

Since the issue we address in our published opinion is pending before the supreme court, 
Boclair
, 189 Ill. 2d 690, in the interest of judicial economy we will 
now provide additional and independent reasons for upholding the summary dismissal of defendant's postconviction petition.

I. 
Additional Background
 

Defendant brought his petition also under section 2--1401 of

the Code of Civil Procedure (Code) (735 ILCS 5/2--1401 (West 1998)), and section 116--3 of the Code of Criminal Procedure of 1963 (725 ILCS 116/3--3 (West 1998)).  

The State's case at trial was that defendant was an upper-level member in a gang which robbed and murdered the victims in Zion, Illinois, during a sham drug transaction arranged by the gang.  Ronald Walker, a "soldier" in the gang, testified for the State as an incident witness.  During his testimony, Walker admitted that he, like defendant, was charged with the murders of Santos Escobedo and Domingo Garcia, Jr., but had agreed to testify against defendant in exchange for a plea of guilty to armed robbery with a recommendation of 20 years' imprisonment in a minimum security prison.  David Caples testified for the State that defendant recited details of the Zion killings to him on the day in late 1988 or early 1989 when defendant arrived at Joliet Correctional Center where Caples was confined in general population.  

Defendant sought to present the testimony of John Zagoria who had been an inmate at Joliet for two weeks in 1990 and would state that Walker could not have spoken to Caples on the day Walker arrived because new inmates at Joliet are kept apart from the general population and placed into classification units for several days to determine their confinement needs.  The court granted the State's motion 
in limine
 to exclude this testimony.   

 This court affirmed the judgment on direct appeal, 
People v.

Parham
, No. 2--91--0865 (1993) (unpublished order under Supreme Court Rule 23), and the Supreme Court later denied leave to appeal, 
People v. Parham
, 151 Ill. 2d 573 (1993).  On June 7, 1993, defendant filed a 
pro se
 postconviction petition in the trial court seeking to vacate the judgment on grounds that Walker had testified falsely in the trial court
 as to his plea agreement with the State. 
Defendant's claim rested solely on the fact that, at Walker's 1991 plea hearing following defendant's trial, the trial court accepted Walker's plea to armed robbery but rejected the State's recommendation for 20 years' imprisonment, sentencing Walker instead to six years' imprisonment with credit for time served.  Defendant argued that this late improvement in Walker's fortune "suggests that his trial testimony, in which he claimed to be promised a 20-year sentence, constituted perjury."  The trial court dismissed the petition without a hearing.  This court affirmed, quoting a portion of the transcript of Walker's hearing in which the trial court explained that it was rejecting the State's recommendation for 20 years' imprisonment because the Department of Corrections was unwilling to ensure that Walker would be placed in a separate facility from the individuals he implicated at defendant's trial.  
People v. Blalock
, No. 2--93--0709 (1995) (unpublished order under Supreme Court Rule 23).  This court found that the trial court rejected the plea agreement and 20-year recommendation out of concern for Walker's safety and that this concern was valid. 
 The Illinois Supreme Court denied leave to appeal.  
People v. Blalock
, 164 Ill. 2d 566 (1995).

On May 12, 1999, defendant, by counsel, filed in the trial court the postconviction petition at issue here.  Defendant first alleged that he learned from "multiple sources" that on several occasions
 Ronald Walker admitted that his trial attorney assured him before he testified at defendant's trial that he would receive six years, not 20 years, in exchange for his testimony.  Defendant submitted that Walker would corroborate this allegation if he were called as a witness at a postconviction hearing.  Defendant argued that "[i]f Walker knew he would not be receiving twenty (20) years in prison, but six (6) instead, his testimony at defendant's trial was false and perjurious."  He also argued that if the State "knew that Walker's testimony was false," or "knew or should have known about claimed safety problems in housing [Walker] prior to Walker testifying for the State," and failed to disclose them, then due process was denied him.  The safety problems defendant referenced were those mentioned by the trial court at Walker's sentencing.

Defendant next alleged that he was denied effective assistance of counsel by his trial attorney's failure to present "readily available evidence" to impeach David Caples' testimony that defendant confessed the Zion crimes to him on the day defendant arrived at Joliet where Caples was confined in general population.  Defendant asserted that this conversation could not have occurred because new inmates are kept apart from general population inmates until they are classified according to security level and other criteria.  Defendant claimed that he stressed to his trial attorney the importance of establishing this fact, but the only witness produced by the attorney for this purpose was John Longoria, whom the court did not permit to testify.  Defendant further claimed that counsel for his direct appeal and first postconviction petition provided ineffective assistance of counsel by not arguing the ineffectiveness of trial counsel in relation to Caples' testimony.   

Defendant also claimed that trial counsel provided ineffective assistance of counsel for failing to communicate
 effectively to defendant (1) "the hazards of going to trial"; (2) "the nature and impact of the evidence the State was going to present against [him]"; and (3) that "the sentence that had to be imposed upon [him] was life without parole, if the trial was lost."  Defendant maintained that if trial counsel had advised adequately 
him on these matters he would have accepted the State's offer of 11 years in prison "notwithstanding a claim of actual innocence."  

Finally, defendant repleaded the allegations of his first petition and asserted, but did not substantiate, a claim of actual innocence. 

A. 
Successive Petitions Under Section 122--3 of the Post Conviction Hearing Act
. 

The State argues that defendant's postconviction claims are waived because he failed to bring them earlier.  Section 122--3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."  725 ILCS 5/122--3 (West  1998).  Further, 
res judicata
 bars reconsideration of claims raised and decided in previous appellate or postconviction proceedings.  
People v. Whitehead
, 169 Ill. 2d 355, 371 (1996). 

The waiver rule is motivated by administrative convenience and is not a jurisdictional bar to consideration of claims.  
Whitehead
, 169 Ill. 2d at 371.  Courts should relent from enforcing the rules of waiver and 
res judicata
 where "fundamental fairness requires," 
 as where the alleged waiver stems from incompetency of appellate counsel, or where the facts relating to the claim do not appear on the face of the original appellate record.  
Whitehead
, 169 Ill.2d at 371, quoting 
People v. Gaines
, 195 Ill. 2d 79, 91 (1984).  Where, however, the defendant has had one complete opportunity to  demonstrate a substantial denial of his constitutional rights, a court may properly dismiss the defendant's second petition.  
People v. Free
, 122 Ill. 2d 367, 376-77 (1988).

We find that defendant had a full and fair opportunity to bring earlier the claims he brings now.  Defendant does not indicate even the general time-frame 
in which he received the supposedly newly discovered evidence concerning the veracity of State's witness Ronald Walker's testimony about his plea negotiations with the State.  Moreover, although defendant faults appellate and postconviction counsel for their failures to bring his claims of ineffectiveness earlier, defendant ignores the fact that he drafted his first postconviction petition 
pro se
.  A defendant's ignorance of postconviction procedures cannot justify the  omission of a claim from his 
pro se
 postconviction petition.  See 
Perry
, 293 Ill. App. 3d at 115-16, citing 
Diefenbaugh
, 40 Ill. 2d at 74.    

Defendant urges that waiver does not apply because his claims involve matters outside the record and thus could not have been raised on direct appeal.  We disagree.  First, defendant is barred from making the present claims not simply by his failure to raise them on direct appeal, but also by his failure to raise them in his first postconviction petition after having a full and fair opportunity to do so.  See 
Free
, 122 Ill. 2d at 376-77.  Second, a petitioner's mere reference to facts outside the record will not preclude application of the waiver rules.  
People v. Erickson
, 161 Ill. 2d 82, 87-88 (1994).  
Reason to relax the procedural bar exists only when what is offered outside the record also explains why the claim it supports could not have been raised earlier.  
Erickson
, 161 Ill. 2d at 87-88.  As noted, defendant does not explain 
adequately why he could not have raised in his first postconviction petition the claims he brought in his second petition. 

For the foregoing reasons, we 
find that defendant waived his claims by failing to include them in his first postconviction petition.  

B. 
Sufficiency of Defendant's Claims Under Sections 122--2 and 
122--2.1(a)(2) of the Post-Conviction Hearing Act
.

A petitioner under the Post-Conviction Hearing Act is not entitled to a hearing on the petition as a matter of right.  
People v. Silagy
, 116 Ill. 2d 357, 365 (1987).  During its initial 90-day review of a petition under section 122--2.1(a)(2) of the Act, the trial court may dismiss the petition without a hearing as "frivolous or patently without merit."  A petition will survive this initial review period only if it states the "gist" of a constitutional claim, 
i.e.
, makes a "substantial showing of a violation of constitutional rights."  
People v. Coleman
, 183 Ill. 2d 366, 381 (1998).  This is a low threshold; the petition need contain
 only a limited amount of detail.  
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).  The petitioner's claims, however, must be supported by the record in the case or by accompanying affidavits.  
Coleman
, 183 Ill. 2d at 381; 
725 ILCS 5/122--2 (West 1998).  The trial court is not to engage in fact-finding during its initial review of a petition; all well-pleaded facts are assumed to be true.  
Coleman
, 183 Ill. 2d at 380-81.  
Nonfactual and nonspecific allegations which amount to no more than conclusions are insufficient to require a hearing under the Act.  
Coleman
, 183 Ill. 2d at 381.

Defendant has not met the pleading requirements of the Act. First, defendant does not name the "multiple sources" from whom he supposedly learned that Walker's attorney assured him before he testified at defendant's trial that he would receive six years rather than 20 years imprisonment in exchange for his testimony against defendant.  Defendant states that Walker himself can corroborate this allegation, but defendant attaches no affidavit from Walker or his attorney saying so.  Second, defendant  cites no sources for his description of Joliet's policies which supposedly could have been used to impeach Caples.  Third,  defendant fails to specify in what respects his trial counsel failed "to clearly and effectively communicate" to him "the hazards of going to trial," and "the nature and impact of the evidence the State was going to present against him."  Such vague accusations of ineffective assistance of trial counsel alone are insufficient to warrant a hearing.  See 
People v. Hayes
, 279 Ill. App. 3d 575, 381  (1996) (holding that claims of ineffective assistance of counsel stated "in a conclusory fashion" were not sufficient to warrant a postconviction hearing).    

Even if we assumed the truth of the one allegation of ineffectiveness which defendant states with a reasonable degree of specificity--
i.e.
, that defendant would not have gone to trial had counsel informed him that the mandatory penalty for the charges against defendant was life imprisonment--we would not find a hearing warranted.  Although trial counsel's failure to apprise the defendant of the maximum and minimum sentences for the offense(s) charged is considered constitutionally deficient performance, a defendant must, to prevail on an ineffectiveness claim based on such a failure, offer more than the bare statement that he would have accepted a plea bargain had counsel apprised him of the consequences of going to trial.  
People v. Curry
, 178 Ill. 2d 509, 531 (1997), citing 
Turner v. Tennessee
, 858 F. 2d 1201, 1206 (6th Cir. 1988), 
vacated on other grounds
, 492 U.S. 902 (1989).  As defendant does no more than state that he would have accepted the plea bargain had he known the consequences of going to trial, we hold that a hearing on his claims was not warranted.  

For the foregoing reasons, we conclude that the trial court properly dismissed defendant's petition without a hearing as frivolous and patently without merit.

II. 
Defendant's Claims Under Section 2--1401 of the Code of Civil Procedure
. 

Section 2--1401(a) of the Code of Civil Procedure (Code)
 (735 ILCS 5/2--1401(a) (West 1998)), 
provides a mechanism for relief from a judgment after more than 30 days have passed since the entry thereof
.   A section 2--1401 petition must be filed "not later than 2 years after the entry of the order or judgment."  735 ILCS 5/2--1401(c) (West 1998).  The time limit is tolled under 2--1401(c) for periods during which the person seeking relief "is under a legal disability or duress or the ground for relief is fraudulently concealed ***."  "Fraudulent concealment ordinarily requires affirmative acts or representations designed to prevent discovery of the cause of action."  
Melko v. Dionisio
, 219 Ill. App. 3d 1048, 1060 (1991).  To be under a legal disability a person must be "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs."  
Selvy v. Beigel
, 309 Ill. App. 3d 768, 776 (1999), quoting 
Sille v. McCann Construction Specialties Co.
, 265 Ill. App. 3d 1051, 1055 (1994).  "Duress includes the oppression, undue influence, or taking undue advantage of the stress of another to the point where another is deprived of the exercise of free will."  
In re Marriage of Chapman
, 162 Ill. App. 3d 308, 316 (1987).  With due recognition of tolling periods, courts must hold litigants to the time limit of section 2--1401(c).  
People v. Caballero
, 179 Ill.2d 205, 211 (1997).      

Section 2--1401(b) provides that a petition "must be supported by affidavit or other appropriate showing as to matters not of record."  735 ILCS 5/2--1401(b) (West 1998). Where a section 2--1401 petition fails to state facts sufficient to warrant relief, it is subject to dismissal without a hearing. 
Ostendorf v. International Harvester Co.
, 89 Ill. 2d 273, 279-80 (1982).  As a general rule, a petition supported only by hearsay affidavits is not enough to warrant relief.  
People v. Sanchez
, 115 Ill. 2d 238, 284 (1986).  Courts should not enforce the bar against hearsay affidavits inflexibly, "especially in capital cases where procedural fairness and factual accuracy are of paramount importance."  
Sanchez
, 115 Ill. 2d at 284.  The trial court's dismissal of a section 2--1401 petition is reviewed for abuse of discretion.  
People v. Sanchez
, 131 Ill.2d 417, 420, (1989).  

The trial court dismissed defendant's petition because defendant's claim that the State suborned perjury by Walker was a claim of constitutional dimensions and therefore not addressable by section 2--1401.  As defendant's petition reasonably can be construed as stating a non-constitutional allegation of perjury, which is addressable under section 2--1401, see 
People v. Burrows
, 172 Ill. 2d 169, 180 (1996), we do not affirm the dismissal based on the grounds stated by the trial court.  Rather, we affirm on the following independent grounds in the record.  See 
People v. Nash
, 173 Ill. 2d 423, 432 (1996).  

First, we find that defendant's claim concerning Walker's testimony is unjustifiably untimely under section 2--1401(c). Defendant does not dispute that his petition is untimely, nor does he offer an adequate reason for the delay.  Defendant attributes the delay to newly discovered evidence that Walker perjured himself, but, as noted above, he does not present even a general time-frame in which he discovered this evidence.  Furthermore, we cannot find, because defendant simply does not allege, that this evidence was concealed deliberately from him or that duress or legal disability prevented him from discovering it.

    Second, we note that defendant failed to attach any non-hearsay affidavits to support his claim concerning Walker's testimony.  Although the court in 
Sanchez
 held that the general rule requiring that 2--1401 petitions be supported by affidavits did not apply in the capital case before it, 
Sanchez
, 115 Ill. 2d  at 284-85, we agree with the First District's observation in 
People v. Perkins
, 260 Ill. App. 3d 516, 520 (1994), that capital cases present unique circumstances requiring departure from the general rule regarding affidavits. We, like the court in 
Perkins
, distinguish 
Sanchez
 on the basis that it was a capital case, and find defendant's claim concerning Walker's testimony deficient because it was not supported by non-hearsay affidavits. 

The remaining two claims in defendant's section 2--1401 petition allege ineffectiveness of counsel, an issue not appropriate for review in a proceeding under section 2--1401.  See 
People v. Smith
, 176 Ill. App. 3d 132, 136 (1988); 
People v. Anderson
, 31 Ill. 2d 262, 264 (1964).  We decline to review these claims for the additional reason that defendant fails even to hint at a reason sufficient under section 2--1401(c) as to why he did not bring these claims on direct appeal or in his first postconviction petition. 

We note in passing that defendant's claim of "actual innocence" will not win him an exemption from the time limit of section 2--1401(c) for claims brought under s
ection 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 116/3-3 (West 1998)).  Defendant devotes all of five words to the making of this claim
 ("Defendant is claiming actual innocence"), and we do not address undeveloped arguments.  See 
People v. Treadway
, 245 Ill. App. 3d 1023, 1027 (1993).      

For the foregoing reasons, we hold that the trial court did not abuse its discretion in dismissing without a hearing defendant's claims under section 2--1401 of the Code of Civil Procedure.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

Affirmed.   

COLWELL, P.J., and RAPP, J., concur.